JUDGE JONES

Kenneth A. Goldberg, Esq. (KG 0295)    **'09 CIV 3000**
**GOLDBERG & FLIEGEL LLP**
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -   x

CLAUDIA WOODARD AND ELISE          :    **COMPLAINT AND JURY DEMAND**
LAWLESS,
                                   :    **JURY TRIAL DEMANDED**
                Plaintiffs,
                                   :
            - against -
                                   :
TWC MEDIA SOLUTIONS, INC.
                                   :
                Defendant.
                                   :

- - - - - - - - - - - - - - - -   x



## NATURE OF THE ACTION AND THE PARTIES

1.   This is an action to redress unlawful discrimination
and harassment based on sex, pregnancy, race, color, and national
origin, unlawful retaliation, and unlawful employment practices,
under Title VII of the Civil Rights Act of 1964, as amended
("Title VII"), 42 U.S.C. § 2000e et seq., the Civil Rights Act of
1866, as amended ("Section 1981"), 42 U.S.C. § 1981 et seq., the
New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. §
290 et seq., and the New York City Human Rights Law, (the
"NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

2.   This is a case about an employer that discriminates
against women and minorities, and about two brave women who
opposed that discrimination only to be unlawfully fired.   The
EEOC found the employer to be in violation of the law and

attempted to resolve the matter. The employer declined to do so
requiring that these two women bring their case to court.

3.    Plaintiff Claudia Woodard ("Ms. Woodard") is an adult
female, residing in South Orange, New Jersey.

4.    Plaintiff Elise Lawless ("Ms. Lawless") is an adult
female, residing in Fair Haven, New Jersey.

5.    Defendant is a New York Corporation with a place of
business in New York, New York. Defendant handles sales and
advertising functions for The Weather Channel, Inc.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over Plaintiffs' claims
pursuant to federal law, Title VII, 42 U.S.C. § 2000e-5(f),
Section 1981, 42 U.S.C. §§ 1981, 1981a, 1988, and 28 U.S.C.
§§ 1331, 1343, 1367(a) and 2201.

7.    Venue is proper in this district pursuant to federal
law, Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391.

8.    Each Plaintiff filed a timely charge of discrimination,
harassment and retaliation with the United States Equal
Employment Opportunity Commission ("EEOC").

9.    In August 2008, the EEOC issued a Determination in
favor of Ms. Woodard on her claims. On or about January 8, 2009,
the EEOC issued a Notice of Right To Sue letter.

10.   In August 2008, the EEOC issued a Determination in
favor of Ms. Lawless on her claims. On or about January 8, 2009,
the EEOC issued a Notice of Right To Sue letter.

11. Plaintiffs mailed a copy of this Complaint to the New York City Commission Of Human Rights and the New York City Corporation Counsel.

12. Plaintiffs filed this lawsuit in a timely fashion and satisfied all of the statutory prerequisites to filing same.

13. Each Plaintiff seeks an award of appropriate relief.

## INTRODUCTION

14. Defendant unlawfully discriminated against Plaintiffs regarding compensation, terms, conditions and privileges of employment, and employment opportunities, unlawfully harassed them, forced them to work in a hostile work environment, and unlawfully retaliated against them. Defendant treated Plaintiffs differently than, and accorded preferential treatment to, persons outside their protected classes who were not subjected to such discrimination, harassment and retaliation.

15. Defendant discriminated against Ms. Woodard because of her sex, race, color, and national origin. Defendant retaliated against Ms. Woodard because she opposed, objected to and filed complaints of discrimination.

16. Defendant discriminated against Ms. Lawless because of her sex and pregnancy. Defendant retaliated against Ms. Lawless because she opposed, objected to and filed complaints of discrimination and an EEOC Charge, because she aided, gave information, participated in, assisted and supported Ms. Woodard's claims of discrimination and retaliation, and agreed to be a witness for Ms. Woodard regarding her claims, and because

-3-

she had previously opposed other discrimination and/or supported other claims of discrimination. See 42 U.S.C. § 2000e-3(a).

17. The discrimination included, among other items:

* Verbal harassment, abusive and demeaning treatment, and defamatory statements.
* Denial of equal terms, conditions and privileges of employment, and employment opportunities.
* False criticisms of job performance.
* Hostile work environment.
* Promoting a "boys club" environment.
* Denying Plaintiffs equal pay, compensation, raises and bonuses and according preferential treatment in compensation to male employees and employees outside Plaintiffs' protected classes.
* Denying Plaintiffs equal access to and assignment of accounts and according preferential treatment with respect to assignment of accounts to male employees and employees outside Plaintiffs' protected classes.
* Denying Ms. Woodard training and support, and according preferential treatment to male employees and employees outside Ms. Woodard's protected classes.

-4-

18.   In addition, during Plaintiffs' employment, Defendant made discriminatory compensation decisions and adopted discrimination compensation practices, and subjected Plaintiffs to discriminatory compensation decisions and discriminatory compensation practices.

19.   Plaintiffs opposed, objected to and complained about the unlawful conduct.   Defendant failed to take appropriate remedial action and failed to put an end to the unlawful conduct and it continued throughout Plaintiffs' employment.   Defendant retaliated against Plaintiffs and unlawfully discharged them.

20.   Defendant's unlawful conduct against Plaintiffs was ongoing and culminated in unlawful termination of employment.

21.   Set forth below are further details regarding Defendant's unlawful conduct against Ms. Woodard and Ms. Lawless.

### CLAUDIA WOODARD

22.   Ms. Woodard is an African American female.   Her national origin is Jamaican.   She is of Jamaican ancestry, heritage and ethnicity.

23.   Ms. Woodard was employed by Defendant June 2004 to April 22, 2005.   At all times, she was fully qualified for her position.   In fact, prior to joining Defendant, and for more than four years, Ms. Woodard worked for The Wall Street Journal as an advertising sales Account Executive.

24.   Ms. Woodard's initial title with Defendant was Client Development Manager and she initially reported to Meade Camp ("Camp"), Senior Vice President for Client Development.   In or

about August 2004, Defendant transferred Ms. Woodard to the
position of Account Manager, which carries an Account Executive
title industry-wide, and assigned her to report to Mark Gall,
Senior Vice President for Eastern Regional Sales ("Gall"). Gall,
a Caucasian male, had joined Defendant in or about February 2003.
Gall told Ms. Woodard that he understood that she was coming from
The Wall Street Journal and had excellent sales experience and
business acumen, but cautioned Ms. Woodard that it would still
take approximately 16 months to fully transition from a print
media sales environment into the cable world.

25.    Throughout Ms. Woodard's employment, Defendant made
numerous discriminatory and harassing comments to her about
women, blacks, and persons of Jamaican national origin. This
included, among other items, numerous derogatory comments about
Jamaicans, blacks and women. For example, such unlawful comments
were made by, among others, Paul Celt, Account Manager ("Celt"),
Gall, and Mary Jo Romeo, Vice President ("Romeo").

26.    The unlawful conduct was ongoing, unwelcome and
offensive. Ms. Woodard opposed, objected to and complained about
the conduct. Defendant knew or should have known of the unlawful
conduct, but failed to take appropriate remedial action and
failed to end the unlawful conduct. The unlawful conduct
continued and escalated, Defendant unlawfully retaliated against
Ms. Woodard, and Defendant unlawfully discharged Ms. Woodard.

27.    Ms. Woodard witnessed that Celt, a Caucasian male
Account Manager with substantial seniority, repeatedly made

-6-

discriminatory comments about his sales assistant, Lavern Broderick (also known as Lavern Gordon), an African American female of Jamaican descent.

28. During a staff meeting in or about mid August 2004, Celt commented that Ms. Broderick was illegally tilling Jamaican rum in her home bathtub and bringing the rum to work.

29. After the August 2004 staff meeting, Ms. Woodard filed a written complaint of discrimination with Defendant. Specifically, on August 18, 2004, Ms. Woodard sent an e-mail to Gall and Pam Sawyer, VP Human Resources, complaining about Celt's unlawful conduct.

30. When Ms. Woodard complained to Gall, Gall himself made discriminatory and harassing comments to Plaintiff.

31. For example, Gall told Ms. Woodard that Jamaicans do not have a strong work ethic.

32. For example, Gall told Ms. Woodard that Jamaicans think they are better than other blacks but they are not better.

33. For example, Gall told Ms. Woodard that he used to be a "big brother" for inner city black boys and that all they wanted to do was to sow their seed and have babies with several women in order to prove their masculinity.

34. Following Ms. Woodard's complaint of discrimination, Defendant raised false criticisms of Ms. Woodard's job performance, attempted to sabotage her work and sought to interfere with the performance of her job duties.

-7-

35.    Defendant denied Ms. Woodard equal assignment of accounts, stripped Ms. Woodard of accounts, denied her training opportunities, excluded her from events and social relations and/or discouraged her from participating in same, denied her employment opportunities and opportunities to advance her career, and reduced her compensation and/or denied her equal pay and equal compensation.

36.    Defendant accorded preferential treatment to male employees, employees outside Ms. Woodard's protected classes, and employees that did not engage in protected activities, with respect to, among other items, assignment of accounts, training opportunities, events and social relations, employment opportunities, opportunities for advancement, and compensation.

37.    In or about mid October 2004, Defendant gave Ms. Woodard a list of accounts and agencies to call upon.    The list was primarily comprised of unpromising accounts and agencies. The list also contained one traditional agency, Horizon Media. However, Defendant stripped Ms. Woodard of Horizon Media before she could make a sales call to that entity.

38.    Defendant provided superior account lists to Account Managers outside Ms. Woodard's protected classes, including among others white male Account Managers.    Defendant gave Ms. Woodard an inferior list because of her sex, race, color and national origin, and because she had filed a complaint of discrimination.

39.    Defendant, and particularly Gall, favored Account Managers outside Ms. Woodard's protected classes, and

particularly white male Account Managers, with respect to
assignments, training and his willingness to accompany them on
sales calls. Gall regularly held closed door meetings with such
Account Managers, but excluded Ms. Woodard from such meetings.
Gall also excluded other female Account Managers from such
meetings. Gall had lunch with such Account Managers and excluded
Plaintiff and other female Account Managers from such lunches.

40. In November 2004, Defendant hired Romeo (Caucasian) for
the position of Vice President and Regional Manager, reporting to
Gall. Defendant assigned Ms. Woodard to report to Romeo. Romeo
made discriminatory and harassing comments to Ms. Woodard based
on her race, color and/or national origin.

41. For example, Romeo told Ms. Woodard that Ms. Woodard
was hired because of a diversity initiative. In essence, Romeo
was telling Ms. Woodard that she was only hired for cosmetic
purposes, to fill some alleged quota.

42. Romeo told Ms. Woodard that she once had to pay a
recruiter to find a diversity candidate because she couldn't find
one otherwise, and that it was very difficult for her to waste
company money on that recruiter. Romeo was essentially telling
Ms. Woodard that she didn't want to hire someone of Ms. Woodard's
protected class and didn't want to spend money to do so.

43. Romeo told Ms. Woodard that black women have problems
speaking up and asking questions because they do not want to
appear stupid. Romeo was essentially degrading all black women.

-9-

44.  In December 2004, Defendant gave Ms. Woodard a
performance evaluation that raised false criticisms of her job
performance.  Defendant alleges that the evaluation was prepared
by Gall and Romeo.  In addition, Defendant substantially reduced
Ms. Woodard's compensation package for 2005.  This was a
continuation of discrimination, harassment and retaliation.

45.  Romeo and Ms. Woodard drove through Paterson, New
Jersey, which is predominantly Black and Hispanic.  During this
trip, Romeo made discriminatory and harassing comments.  Romeo
asked how people could live there.  Ms. Woodard reminded Romeo
that Ms. Woodard was born in Jamaica and raised in Paterson.
Romeo asked Ms. Woodard what language is spoken in Jamaica.  Ms.
Woodard said English and Romeo said she speaks good English.

46.  On another occasion, Romeo demanded that Ms. Woodard
reschedule a critical surgery for Ms. Woodard's then two-year old
son, because of a sales meeting to be held in Florida that   ·
overlapped the surgery.  This was a continuation of
discrimination, harassment and retaliation.  Ms. Woodard provided
Defendant with a doctor's note and was told she could leave the
sales meeting one day early for the surgery.

47.  On or about January 28, 2005, Ms. Woodard filed a
written complaint of discrimination with Defendant, focusing on
Romeo's unlawful conduct.  On or about February 2, 2005, Ms.
Woodard submitted a follow-up memorandum, referring to "hostile
conditions" and providing details of "discriminatory comments."

-10-

48. On January 28, 2005, Romeo sent an e-mail to Ms. Woodard removing her from certain deals and stating that "I have reservations in general about your skillsets and the mismatch for the skills required for an Account Manager." On February 1, 2005, Ms. Woodard sent an e-mail to Gall responding to and complaining about Romeo's January 28, 2005 e-mail.

49. In February 2005, Romeo separated from Defendant and Defendant assigned Ms. Woodard to report to Camp, an Interim Sales Manager. At this time, Ms. Woodard became the only Account Manager assigned to Camp. Gall continued to exercise authority and control over Ms. Woodard and the unlawful conduct continued.

50. Ms. Woodard asked Camp for guidance. Camp referred Ms. Woodard to Gall, who failed to provide effective assistance.

51. Gall regularly went on sales calls with white, male Account Managers, but rarely went on calls with Ms. Woodard.

52. Defendant sought to prevent Ms. Woodard from participating in training, trips and other events and activities by, among other items, failing to notify Ms. Woodard of same.

53. Defendant assigned Ms. Woodard unpromising accounts and when she asked for more accounts, she was given a "dead list" for sales calls. Ms. Woodard scheduled sales calls. Defendant told Ms. Woodard that she could not go on a sales call without a representative from management and often no one was available. Defendant also made Ms. Woodard cancel several client meetings, which further undermined Ms. Woodard's performance of her job.

54. Gall attempted to undermine Ms. Woodard with her clients. Gall offered such clients discounted rates behind Ms. Woodard's back and defamed Ms. Woodard to clients.

55. On or about April 18, 2005, Defendant, by Gall, issued a memorandum to Ms. Woodard raising false criticisms of her performance and threatening her employment. Gall's memorandum stated that Plaintiff had until May 12, 2005 to achieve certain goals and that her performance would be reviewed at that time. Gall's memorandum also contained requirements that clearly contradicted established policies and practices of Defendant.

56. On or about April 20, 2005, Ms. Woodard filed a written response to the April 18, 2005 memorandum.

57. On April 22, 2005, the Company unlawfully terminated Ms. Woodard's employment. Among other items, Defendant told Ms. Woodard that she was being fired for the reasons set forth in the April 18, 2005 memorandum. Defendant never gave Ms. Woodard the opportunity to meet the alleged goals in that memorandum.

58. As of April 22, 2005, Ms. Woodard was about 17% ahead of her sales goal for the current quarter. Ms. Woodard's final paycheck contained her largest sales commission to date.

59. Defendant unlawfully discharged Ms. Woodard because of her sex, race, color and national origin, and because she opposed, objected to and complained of discrimination.

60. In or about June 2005, Ms. Woodard filed an EEOC Charge. She subsequently filed an Amended EEOC Charge.

61.   The EEOC conducted an investigation and, in or about
August 2008, issued a Determination in Ms. Woodard's favor
stating, among other items:

> *   The evidence shows that during Charging
>     Party's ten month employment with Respondent
>     she made two separate complaints of
>     discrimination based on race and national
>     origin.
> *   Charging Party was given a "Confidential
>     Memorandum" regarding performance issues and
>     four days later was terminated for not
>     following an order.
> *   Given the above-described incidents, there is
>     sufficient evidence to believe that Charging
>     Party was subjected to a hostile work
>     environment because of her sex, race,
>     national origin, and in retaliation for her
>     internal complaints of discrimination, in
>     violation of Title VII.

### ELISE LAWLESS

62.   Ms. Lawless is a female.

63.   Ms. Lawless was employed by Defendant as an Account
Manager from January 1999 to March 29, 2006. At all times, she
was fully qualified for her position. For example, Ms. Lawless
received raises from 1999 through 2004. For example, in January
2004, Ms. Lawless received a performance evaluation indicating

-13-

that she met or exceeded every goal. For example, Ms. Lawless received a substantial bonus for 2003 and regularly received written praise, through about mid-2005, for her job performance. Ms. Lawless regularly achieved or exceeded her sales goals.

64. During Ms. Lawless' employment, Defendant denied Ms. Lawless equal assignment of accounts and equal pay. Defendant gave more desirable accounts and higher compensation to male Account Managers in the New York office who were less experienced and less qualified than Ms. Lawless.

65. In or about January 2005, Ms. Lawless advised Defendant that she was pregnant and that she had a high-risk pregnancy. That same year, Defendant substantially increased Ms. Lawless' workload, allegedly due to high staff turnover.

66. As noted above, in 2004 and 2005, Ms. Woodard filed internal complaints of discrimination with Defendant. As noted above, in April 2005, Defendant terminated Ms. Woodard's employment and in June 2005, Ms. Woodard filed an EEOC Charge.

67. Ms. Woodard identified Ms. Lawless as a witness in support of her claims. In 2005, Ms. Lawless agreed to be a witness in support of Ms. Woodard's claims.

68. In 2005, Defendant confronted Ms. Lawless and told her that Ms. Woodard was relying upon Ms. Lawless to support her claims. Defendant threatened Ms. Lawless, telling her that she was "either for the Company or not" and that Ms. Lawless should cease helping "birds with broken wings", apparently referring to Ms. Woodard and Meena Bhiro, a female of Guyanese descent.

-14-

69. On August 11, 2005, Ms. Lawless went to work and suffered contractions. She called her doctor and scheduled a doctor's appointment for that day. Ms. Katherine Cachola, a co-worker, accompanied Ms. Lawless to her doctor's office. Ms. Lawless' doctor advised her to cease commuting from New Jersey to New York for work. Ms. Lawless so advised Pam Sawyer (VP, HR) and provided a doctor's note, and was told that she could telecommute. Ms. Lawless did so and performed job duties well. While Ms. Lawless was telecommuting, Defendant made defamatory statements about Ms. Lawless to staff, including among other items that Ms. Lawless was not performing her job duties.

70. Gall defamed Ms. Lawless and sought to undermine her relationship with clients.

71. On August 18, 2005, Ms. Lawless sent an e-mail to Human Resources complaining about this matter and regarding her pregnancy and medical condition. Defendant raised false criticisms of Ms. Lawless' job performance and on August 19, 2005 essentially directed her to commence a leave of absence. Prior to those communications, Ms. Lawless was not planning to commence her leave of absence until on or about September 6, 2005.

72. At Defendant's direction, Ms. Lawless commenced a protected maternity leave on or about August 29, 2005.

73. During Ms. Lawless' leave, Defendant unlawfully discriminated against her and retaliated against her. Examples are set forth below.

-15-

74. For example, Defendant stripped Ms. Lawless of major accounts and replaced them with inferior accounts. Those major accounts were not reassigned to Ms. Lawless when she returned to work from maternity leave. Some of these clients asked Defendant to be reassigned to Ms. Lawless, but Defendant refused to do so.

75. For example, Defendant made defamatory statements about Ms. Lawless to staff. Upon information and belief, Catherine Jolly and Rick Monihan witnessed Gall making defamatory statements about Ms. Lawless, including criticizing her sales figures. Ms. Lawless' actual sales figures reflected that she was on track to achieve or exceed her goals and that the criticisms of her job performance were baseless. Ms. Lawless also received correspondence through about mid-2005 praising her job performance, which further belies the baseless criticism.

76. For example, Defendant moved Ms. Lawless' workstation away from a window, where she had worked for years, to a windowless area, referred to as "rookie row", because less experienced employees were generally assigned to work there.

77. In or about mid December 2005, Ms. Lawless returned to work from her protected maternity leave.

78. Defendant continued to discriminate and retaliate against Ms. Lawless. Examples are set forth below.

79. For example, when Ms. Lawless returned from leave, she noticed a vacant window-area workstation and requested it. Defendant denied Ms. Lawless' request. Thereafter, in or about January 2006, Defendant hired Mr. RJ Maloney as an Account

-16-

Manager, gave him some of Ms. Lawless' accounts, gave him a window-area workstation, and upon information and belief, paid him greater wages than Ms. Lawless.

80. For example, shortly after Ms. Lawless returned from her leave, Defendant gave her a performance evaluation that raised false criticisms of her job performance and placed her on a 60-day performance improvement plan ("PIP"). This was the first time in Ms. Lawless' 7+ year career at Defendant that she was placed on a PIP, and the PIP was not justified.

81. For example, Defendant denied Ms. Lawless a raise for 2006.

82. For example, Defendant denied Ms. Lawless sales credit (for bonus purposes) for accounts that Ms. Lawless closed prior to commencing her leave. Defendant gave such credit to male account managers that had not negotiated or closed those deals.

83. In January 2006, Defendant gave Ms. Lawless two warnings, in rapid succession, dated January 23, 2006 and January 27, 2006, that raised false criticisms of her performance.

84. In January 2006, Ms. Lawless filed an EEOC Charge. Ms. Lawless' counsel sent a copy of the EEOC Charge to Defendant and Defendant received it by early February 2006.

85. On February 15, 2006, Ms. Lawless met with Richard Klein, Human Resources ("Klein"), regarding discrimination and retaliation against her. She sent a follow up e-mail to him on February 16, 2006 documenting the disparate treatment of male and female employees.

-17-

86. Defendant's Human Resource Department, including Pam Sawyer, Richard Klein and SVP Lisa Chang, were repeatedly made aware of discrimination but failed to take appropriate remedial action.

87. On February 17, 2006, Ms. Lawless responded in writing to the warnings given to her in January 2006.

88. Ms. Lawless also complained that Defendant gave her a goal for 2006 that was unattainable and requested an explanation as to the basis for the assignment of such a goal. Defendant did not respond to Ms. Lawless' request.

89. Notably, Gall assigned Mr. Maloney an account list with approximately 70% of booked revenue for 2006. Gall assigned Ms. Lawless an account list with approximately 20% of booked revenue. Defendant gave Ms. Lawless the lowest percentage of booked revenue of all 11 Account Managers. The other 10 Account Managers all had booked revenue between approximately 40%-80%. This was done even though Ms. Lawless was the most experienced Weather Channel salesperson. She was given a list of unpromising accounts and a "dead list" of accounts where clients greatly reduced spending and/or had already placed little to no business for the year. Some never advertised on television. Ms. Lawless complained to Defendant that certain accounts assigned to Ms. Lawless, to inflate her budget, actually belonged to other Account Managers. Defendant imposed an inflated goal upon Ms. Lawless even though such clients belonged to other Account Managers. This was done to prevent Ms. Lawless from meeting the

-18-

goal for 2006 imposed upon her when she returned from leave. This was in direct contradiction to established policies and procedures.

90.  On or about March 9, 2006, Defendant paid Ms. Lawless a bonus of approximately $6,000. At or about that time, Ms. Lawless also closed about $1.1 million in business. On March 17, 2006, Defendant placed Ms. Lawless on a paid administrative leave. Klein told Ms. Lawless that she was being placed on leave because she had filed an EEOC Charge, which was akin to "sticking a stick in management's eye." At the same time, Defendant told Ms. Lawless that it had an interest in seeking a settlement of her claims.

91.  Ms. Lawless asked how long she would be forced to remain on leave. Defendant said as long as she negotiated in good faith. Defendant made an unreasonable offer to Ms. Lawless in exchange for her resignation and release of claims. During Ms. Lawless' leave, her manager Terry Sekel told Ms. Lawless' clients that Ms. Lawless had taken an emergency leave to be with her children. Clients called Ms. Lawless expressing concern.

92.  Ms. Lawless rejected Defendant's offer. Defendant directed Ms. Lawless to return to work. Ms. Lawless did so and was immediately fired. Defendant unlawfully discharged Ms. Lawless because of her sex and pregnancy, and because she engaged in protected activities. Ms. Lawless' 7+ years' experience at Defendant, combined with her track record of performance, sales and successes, further demonstrate that Defendant's proffered

-19-

reason for firing her was a pretext for discrimination,
retaliation and unlawful termination of employment.

93.   The EEOC conducted an investigation regarding Ms.
Lawless' EEOC Charge and, in or about August 2008, issued a
Determination in Ms. Lawless' favor stating, among other items:

* Charging Party alleges that she was
discriminated against based on pregnancy and
gender.  Charging Party asserts that she was
retaliated against for opposing
discrimination in the workplace, and for
agreeing to be a witness for complainant
Claudia Woodard.

* Respondent denies the allegations, and
asserts that Charging Party was terminated
for poor performance, problematic behavior,
and lack of communication.

* The evidence gathered contradicts
Respondent's contention that Charging Party
was a substandard performer.

* The record shows that the Charging Party
opposed alleged discriminatory employment
practices by Respondent, and as a result, her
performance was unfairly criticized and she
was terminated.

* Given the above there is sufficient evidence
to believe that Charging Party was retaliated

-20-

against for her opposing respondent's
discriminatory practices, and because of her
gender and pregnancy, in violation of Title
VII.

### GENERAL

94. From time to time, Gall summoned Ms. Woodard, Ms.
Lawless and/or other female employees into his office. He often
put his legs on the desk and opened them, thereby exposing his
crotch. During such meetings, Gall sometimes also swung a toy
baseball bat. Gall said that SVP Paul Iaffaldano had a "hard on"
for Ms. Lawless and that female employees should "suck up" to
Gall. Gall had high turnover among his female subordinates.

95. Defendant's conduct, as alleged herein, constituted
unlawful discrimination, harassment and retaliation. Defendant's
proffered reason for the conduct was a pretext for unlawful
discrimination, unlawful discharge and unlawful retaliation.

96. Defendant's discrimination and harassment was severe
and pervasive, adversely affected the terms, conditions and
privileges of Plaintiffs' employment, resulted in adverse
tangible employment actions, and created a hostile, offensive and
abusive work environment.

97. Tolerance of unlawful discrimination and harassment was
a term and condition of Plaintiffs' employment, and they suffered
adverse tangible employment actions because they refused to
acquiesce to that conduct and protested such conduct. Plaintiffs
have also been the victims of "quid pro quo" harassment.

-21-

98.  Defendant's unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiffs' protected rights to be free from unlawful discrimination, harassment and retaliation.

99.  Defendant knew or should have known of the unlawful discrimination, harassment and retaliation.  Defendant failed to exercise reasonable care to prevent and correct unlawful discrimination, unlawful harassment and unlawful retaliation.

100. Defendant authorized unlawful discrimination, unlawful harassment and unlawful retaliation and the employees who engaged in such unlawful conduct were unfit and Defendant was reckless and/or negligent in employing them.  Defendant engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled, supported, ratified, approved, condoned and/or coerced the unlawful conduct.

101. Upon information and belief: (a) Defendant discriminated against and/or harassed other employees; (b) one or more other employees opposed, objected to and/or complained about discrimination and/or harassment; and (c) Defendant retaliated against one or more other employees who objected to, opposed and/or complained about discrimination and/or harassment.

102. Upon information and belief, in addition to Plaintiffs, other victims of Defendant's unlawful discrimination, harassment and retaliation include, among others:  Meena Bhiro, Courtney Kurland, Jen Monson, and Catherine Jolly.  Upon further

-22-

information and belief, when complaints were filed, Defendant pressured witnesses to change their story and/or statements.

103. Defendant engaged in a continuing violation of law. Upon information and belief, after Defendant unlawfully fired Plaintiffs, Defendant made defamatory statements about Plaintiffs. For example, after Defendant fired Ms. Woodard, Gall attended a client meeting with Jen Monson and Randy Artcher. Gall attempted to blame Ms. Woodard for his own lack of knowledge regarding the client and made defamatory statements about her.

104. As a result of Defendant's unlawful conduct, each Plaintiff has suffered, and continues to suffer, among other items, substantial damages, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Each Plaintiff is entitled to the relief sought herein.

### COUNT ONE

### (TITLE VII)

105. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 104 of this Complaint with the same force and effect as though fully set forth herein.

106. This Count is brought under Title VII, 42 U.S.C. § 2000e et seq., as amended, and reference is made to Title VII in its entirety and to 42 U.S.C. §§ 2000e, 2000e(b), 2000e(f), 2000e-2(a), 2000e-3(a), 2000e-5(g), 2000e-5(k), and 42 U.S.C. § 1981a.

-23-

107. At all relevant times, Defendant was an "employer" within the meaning of Title VII.

108. At all relevant times, each Plaintiff was an "employee" within the meaning of Title VII.

109. Defendant's conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination, including without limitation on the basis of sex, pregnancy, race, color, and national origin, in violation of Title VII.

In addition, Defendant made discriminatory compensation decisions and adopted discrimination compensation practices, and subjected Plaintiffs to discriminatory compensation decisions and discriminatory compensation practices.

110. Defendant's conduct, as alleged herein, constituted unlawful retaliation in violation of Title VII.

111. Defendant's conduct, as alleged herein, was carried out with malice or reckless disregard for each Plaintiff's protected rights to be free from discrimination, harassment, and retaliation.

112. As a result of Defendant's unlawful conduct, each Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs. Each Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under Title VII.

-24-

113. As a further result of Defendant's unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Each Plaintiff is entitled to recover damages for such injuries from Defendant under Title VII.

### COUNT TWO

### (SECTION 1981)

114. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 113 of this Complaint with the same force and effect as though fully set forth herein.

115. This Count is brought under Section 1981, 42 U.S.C. § 1981 et seq. and reference is made to Section 1981 in its entirety and to 42 U.S.C. §§ 1981, 1981a, 1988, and 1988(b).

116. Defendant's conduct, as alleged herein, constituted unlawful discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, pension monies and contributions, privileges, terms, and conditions of the contractual relationship," in violation of Section 1981.

117. Defendant's conduct, as alleged herein, constituted unlawful retaliation in violation of the Section 1981.

118. Defendant's conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiffs' rights to be free from discrimination and retaliation.

-25-

119. As a result of Defendant's unlawful conduct, Plaintiffs have suffered and continue to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs. Plaintiffs are entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under Section 1981.

120. As a further result of Defendant's unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Each Plaintiff is entitled to recover damages for such injuries from Defendant under Section 1981.

## COUNT THREE

### (NYSHRL)

121. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 120 of this Complaint with the same force and effect as though fully set forth herein.

122. This Count is brought under the NYSHRL, N.Y. Exec. L. § 290 et seq. and reference is made to the NYSHRL in its entirety and to N.Y. Exec. L. §§ 292, 292(1), 292(5), 292(6), 296, 296(1), 296(1)(a), 296(1)(e), 296(3-a)(c), 296(6), 296(7), and 297(9).

-26-

123. At all relevant times, Defendant was an "employer" within the meaning of the NYSHRL.

124. At all relevant times, each Plaintiff was an "employee" within the meaning of the NYSHRL, and a "person" within the meaning of the NYSHRL.

125. Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination, including without limitation on the basis of sex, pregnancy, disability, race, color, and national origin, in violation of the NYSHRL.

126. Defendant's conduct, as alleged herein, constituted unlawful retaliation in violation of the NYSHRL.

127. Defendant is liable for the unlawful conduct herein under the NYSHRL, see, e.g., NYSHRL § 296(1) and § 296(6).

128. As a result of Defendant's unlawful conduct, each Plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation, lost wages/bonuses, lost benefits, pension monies and contributions, lost interest and attorneys' fees and costs. Each Plaintiff is entitled to recover such monetary and other damages, from Defendant under the NYSHRL.

129. As a further result of Defendant's unlawful conduct, each Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting

-27-

embarrassment and humiliation. Plaintiff is entitled to recover damages for such injuries from Defendant under the NYSHRL.

## COUNT FOUR

### (NYCHRL)

130. Plaintiffs repeat and reallege every allegation in paragraphs 1 through 129 of this Complaint with the same force and effect as though fully set forth herein.

131. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq. and reference is made to the NYCHRL in its entirety and to N.Y.C. Admin. Code §§ 8-102, 8-102(1), 8-102(5), 8-102(17), 8-107, 8-107(1), 8-107(1)(a), 8-107(6), 8-107(7), and 8-502.

132. At all relevant times herein, Defendant was an "employer", "covered entity" and a "person" within the meaning of the NYCHRL.

133. At all relevant times herein, each Plaintiff was a "person" within the meaning of the NYCHRL.

134. Defendant's conduct, as alleged herein, constituted "unlawful discriminatory practices" and unlawful discrimination, including without limitation on the basis of sex, pregnancy, disability, race, color, and national origin, in violation of the NYCHRL.

135. Defendant's conduct, as alleged herein, constituted unlawful retaliation in violation of the NYCHRL.

136. Defendant's conduct, as alleged herein, was carried out with malice or reckless disregard for each Plaintiff's protected

-28-

rights to be free from discrimination and harassment, and
retaliation.

137. Defendant is liable for the unlawful conduct herein
under the NYCHRL, see, e.g., NYCHRL § 8-107(1) and § 8-107(6).

138. As a result of Defendant's unlawful conduct, each
Plaintiff has suffered and continues to suffer injury, with
resulting monetary and other damages, including without
limitation, lost wages/bonuses, lost benefits, pension monies and
contributions, lost interest and attorneys' fees and costs.

139. As a further result of Defendant's unlawful conduct,
each Plaintiff has suffered and continues to suffer, among other
items, impairment and damage to her good name and reputation,
emotional distress, mental anguish, emotional pain, suffering,
inconvenience, loss of enjoyment of life, and lasting
embarrassment and humiliation. Each Plaintiff is entitled to
recover damages for such injuries from Defendant under the
NYCHRL.

140. Each Plaintiff is entitled to recover monetary damages
and other damages and relief, punitive damages, interest, and
attorneys' fees and costs from Defendant under the NYCHRL.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment on all Counts, as
follows:

(A)  On Count One, enter a judgment declaring the acts and
practices of Defendant to be in violation of Title VII;

-29-

(B)  On Count One, award each Plaintiff as against Defendant
reinstatement and the amount of wages, including without
limitation back pay, front pay, bonuses, benefits, pension monies
and contributions, and interest lost as a result of Defendant's
unlawful discrimination, unlawful harassment and unlawful
retaliation;

(C)  On Count One, award each Plaintiff as against Defendant
consequential damages for losses resulting from Defendant's
unlawful discrimination, unlawful harassment and unlawful
retaliation;

(D)  On Count One, award each Plaintiff as against Defendant
compensatory damages for, among other items, injury, impairment
and damage to her good name and reputation, emotional distress,
mental anguish, emotional pain, suffering, inconvenience, loss of
enjoyment of life, lasting embarrassment and humiliation, and
other pecuniary and nonpecuniary losses;

(E)  On Count One, award each Plaintiff as against Defendant
punitive damages;

(F)  On Count One, award each Plaintiff as against Defendant
the costs of this action, together with reasonable attorneys'
fees;

(G)  On Count Two, enter a judgment declaring the acts and
practices of Defendant to be in violation of Section 1981;

(H)  On Count Two, award each Plaintiff as against Defendant
reinstatement and the amount of wages, including without
limitation back pay, front pay, bonuses, benefits, pension monies

-30-

and contributions, and interest lost as a result of Defendant's
unlawful discrimination, unlawful harassment and unlawful
retaliation;

(I)  On Count Two, award each Plaintiff as against Defendant
consequential damages for losses resulting from Defendant's
unlawful discrimination, unlawful harassment and unlawful
retaliation;

(J)  On Count Two, award each Plaintiff as against Defendant
compensatory damages for, among other items, injury, impairment
and damage to her good name and reputation, emotional distress,
mental anguish, emotional pain, suffering, inconvenience, loss of
enjoyment of life, lasting embarrassment and humiliation, and
other pecuniary and nonpecuniary losses;

(K)  On Count Two, award each Plaintiff as against Defendant
punitive damages;

(L)  On Count Two, award each Plaintiff as against Defendant
the costs of this action, together with reasonable attorneys'
fees;

(M)  On Count Three, enter a judgment declaring the acts and
practices of Defendant to be in violation of the NYSHRL;

(N)  On Count Three, award each Plaintiff as against
Defendant reinstatement and the amount of wages, including
without limitation back pay, front pay, bonuses, benefits,
pension monies and contributions, and interest lost as a result
of Defendant's unlawful discrimination, unlawful harassment and
unlawful retaliation;

-31-

(O)  On Count Three, award each Plaintiff as against
Defendant consequential damages for losses resulting from
Defendant's unlawful discrimination, unlawful harassment and
unlawful retaliation;

(P)  On Count Three, award each Plaintiff as against
Defendant compensatory damages for, among other items, injury,
impairment and damage to her good name and reputation, emotional
distress, mental anguish, emotional pain, suffering,
inconvenience, loss of enjoyment of life, lasting embarrassment
and humiliation, and other pecuniary and nonpecuniary losses;

(Q)  On Count Four, enter a judgment declaring the acts and
practices of Defendant to be in violation of the NYCHRL;

(R)  On Count Four, award each Plaintiff as against
Defendant reinstatement and the amount of wages, including
without limitation back pay, front pay, bonuses, benefits,
pension monies and contributions, and interest lost as a result
of Defendant's unlawful discrimination, unlawful harassment and
unlawful retaliation;

(S)  On Count Four, award each Plaintiff as against
Defendant consequential damages for losses resulting from
Defendant's unlawful discrimination, unlawful harassment and
unlawful retaliation;

(T)  On Count Four, award each Plaintiff as against
Defendant compensatory damages for, among other items, injury,
impairment and damage to her good name and reputation, emotional
distress, mental anguish, emotional pain, suffering,

-32-

inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(U)  On Count Four, award each Plaintiff as against Defendant punitive damages;

(V)  On Count Four, award each Plaintiff as against Defendant the costs of this action, together with reasonable attorneys' fees;

(W)  On Counts One to Four, award each Plaintiff any and all other damages and relief provided by the applicable statutes;

(X)  Grant each Plaintiff such other and further relief as may be necessary and proper.

## JURY DEMAND

Plaintiffs demand a jury trial for all issues triable.

Dated:     New York, New York
           March 27, 2009

                              GOLDBERG & FLIEGEL, LLP

                         By:  _Kennett a. Goldberg_
                              Kenneth A. Goldberg (KG 0295)
                              60 East 42nd Street, Suite 3421
                              New York, New York 10165
                              (212) 983-1077
                              Attorneys for Plaintiffs

-33-