UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDIA WOODARD and ELISE LAWLESS,

          Plaintiffs,

-against-

TWC MEDIA SOLUTIONS, INC. and THE WEATHER CHANNEL,

          Defendants.

Case No. 09 Civ. 3000 (BSJ) (AJP)

**ANSWER**

---

Defendants TWC Media Solutions, Inc. ("TWCMS") and The Weather Channel ("TWC") (collectively, "Defendants"), by their attorneys Vedder Price P.C., hereby answer the Plaintiffs' First Amended Complaint and Jury Demand (the "Complaint") as follows:

### NATURE OF THE ACTION AND THE PARTIES

1. Deny the allegations in paragraph 1 of the Complaint, except admit that Plaintiffs purport to bring an action against Defendants under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.* ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

2. Deny the allegations in paragraph 2 of the Complaint, except admit that Plaintiffs are women.

3. Admit the allegations in paragraph 3 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. Woodard resides in South Orange, New Jersey.

4. Admit the allegations in paragraph 4 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. Lawless resides in Fair Haven, New Jersey.

5. Admit the allegations in paragraph 5 of the Complaint.

6. Deny the allegations in paragraph 6 of the Complaint, except admit that TWC is a Georgia corporation with an address in Atlanta, Georgia.

## JURISDICTION AND VENUE

7. Deny the allegations in paragraph 7 of the Complaint, except admit that Plaintiffs purport to invoke the jurisdiction of this Court.

8. Deny the allegations in paragraph 8 of the Complaint, except admit that Plaintiffs purport to establish venue in this Court.

9. Deny the allegations in paragraph 9 of the Complaint.

10. Deny the allegations in paragraph 10 of the Complaint and refer to the documents referenced therein for their terms and effect.

11. Deny the allegations in paragraph 11 of the Complaint and refer to the documents referenced therein for their terms and effect.

12. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13. Deny the allegations in paragraph 13 of the Complaint, except admit that Plaintiffs filed a Complaint in federal court within 90 days from the date of their respective right to sue letters.

14. Deny the allegations in paragraph 14 of the Complaint.

## DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE

15. Deny the allegations in paragraph 15 of the Complaint, except admit that Plaintiffs seek to hold Defendants jointly and severally liable for damages in this matter.

16. Deny the allegations in paragraph 16 of the Complaint.

17. Deny the allegations in paragraph 17 of the Complaint.

18. Deny the allegations in paragraph 18 of the Complaint, except admit that during Plaintiffs' employment, employees of TWC regularly interacted with employees of TWCMS.

19. Deny the allegations in paragraph 19 of the Complaint, except admit that at all relevant times, TWCMS handled sales and advertising functions for TWC. Defendants further answer and aver that TWCMS has offices in New York, Atlanta, Chicago, Detroit, San Francisco, Dallas and Los Angeles.

20. Deny the allegations in paragraph 20 of the Complaint.

21. Deny the allegations in paragraph 21 of the Complaint, except admit that during Plaintiffs' employment, employees of TWC and TWCMS were connected through an email system, with each employee having an email address in the form: name@weather.com.

22. Deny the allegations in paragraph 22 of the Complaint, except admit that TWC maintained a Human Resources department, which covered TWC and TWCMS; that Lisa Chang, Pam Sawyer and Richard Klein were Human Resources personnel at TWC who communicated with Plaintiffs regarding various matters; and that TWC received a copy of Plaintiffs' EEOC Charges after they were filed with the EEOC. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegations that Chang, Sawyer and Klein were aware of Plaintiffs' alleged protected activity, and were aware of and/or involved in the termination of Plaintiffs' employment.

23. Deny the allegations in paragraph 23 of the Complaint, except admit that TWC issued policies applicable to TWCMS employees.

24. Deny the allegations in paragraph 24 of the Complaint.

25. Deny the allegations in paragraph 25 of the Complaint.

26. Deny the allegations in paragraph 26 of the Complaint.

27. Deny the allegations in paragraph 27 of the Complaint, except admit that according to Defendants' website, Mr. Iaffaldano oversees and has leadership responsibility for all advertising sales functions of The Weather Channel and weather.com.

28. Deny the allegations in paragraph 28 of the Complaint.

29. Deny the allegations in paragraph 29 of the Complaint, except admit that at all relevant times, TWC issued paychecks to employees of TWCMS; that TWC and TWCMS both have an address in Atlanta, Georgia at 300 Interstate North Pkwy, Atlanta, Georgia 30339; and that during Plaintiffs' employment, their paychecks indicated that they were issued by the TWC in Atlanta, Georgia.

### INTRODUCTION TO DEFENDANTS' UNLAWFUL CONDUCT

30. Deny the allegations in paragraph 30 of the Complaint.

31. Deny the allegations in paragraph 31 of the Complaint.

32. Deny the allegations in paragraph 32 of the Complaint.

33. Deny the allegations in paragraph 33 of the Complaint.

34. Deny the allegations in paragraph 34 of the Complaint.

35. Deny the allegations in paragraph 35 of the Complaint.

36. Deny the allegations in paragraph 36 of the Complaint.

37. Deny the allegations in paragraph 37 of the Complaint.

## CLAUDIA WOODARD

38. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Complaint, except admit that Woodard is an African American female.

39. Deny the allegations in paragraph 39 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that prior to joining TWCMS, and for more than four years, Woodard worked for The Wall Street Journal as an advertising sales Account Executive.

40. Deny the allegations in paragraph 40 of the Complaint, except admit that Woodard initially reported to Meade Camp, Senior Vice President for Client Development; that in or about August 2004, the Client Development Managers, including Woodard, were transferred to Account Manager positions; and that as an Account Manager, Woodard reported to Mark Gall, Senior Vice President for Eastern Regional Sales, who is a Caucasian male.

41. Deny the allegations in paragraph 41 of the Complaint, except admit that Paul Celt was a TWCMS Account Manager and Mary Jo Romeo was a TWCMS Vice President during Woodard's employment.

42. Deny the allegations in paragraph 42 of the Complaint.

43. Deny the allegations in paragraph 43 of the Complaint, except admit that Celt was a Caucasian male Account Manager and that Lavern Broderick was an African American female sales assistant, and except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. Broderick is of Jamaican descent.

44. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint.

45. Deny the allegations in paragraph 45 of the Complaint, except admit that on August 18, 2004, Woodard sent an email to Gall and Sawyer concerning certain statements allegedly made by Celt.

46. Deny the allegations in paragraph 46 of the Complaint.

47. Deny the allegations in paragraph 47 of the Complaint.

48. Deny the allegations in paragraph 48 of the Complaint.

49. Deny the allegations in paragraph 49 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Gall told Woodard that he used to be a "big brother" for inner city children.

50. Deny the allegations in paragraph 50 of the Complaint.

51. Deny the allegations in paragraph 51 of the Complaint.

52. Deny the allegations in paragraph 52 of the Complaint.

53. Deny the allegations in paragraph 53 of the Complaint, except admit that Woodard was given a list of accounts and agencies to call upon including Horizon Media, a traditional agency.

54. Deny the allegations in paragraph 54 of the Complaint.

55. Deny the allegations in paragraph 55 of the Complaint.

56. Deny the allegations in paragraph 56 of the Complaint, except admit that beginning in November 2004 Romeo reported to Gall, and Woodard reported to Romeo.

57. Deny the allegations in paragraph 57 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Romeo told Woodard that Woodard was hired because of a diversity initiative.

58. Deny the allegations in paragraph 58 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Romeo told Woodard that she once had to pay a recruiter to find a diversity candidate because she could not find one otherwise, and that it was very difficult for her to waste company money on that recruiter.

59. Deny the allegations in paragraph 59 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Romeo told Woodard that black women have problems speaking up and asking questions because they do not want to appear stupid.

60. Deny the allegations in paragraph 60 of the Complaint, except admit that in December 2004, Woodard received a performance evaluation prepared by Gall and Romeo.

61. Deny the allegations in paragraph 61 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Paterson, New Jersey is predominately Black and Hispanic; and that that while driving to a client meeting together during Woodard's employment, Romeo and Woodard passed through Paterson, New Jersey.

62. Deny the allegations in paragraph 62 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that Romeo demanded that Woodard reschedule a critical surgery for Woodard's then two-year old son, because of a sales meeting to be held in Florida that overlapped with the surgery; and that Woodard provided Defendants with a doctor's note and was told that she could leave the sales meeting one day early for the surgery.

63. Deny the allegations in paragraph 63 of the Complaint, except admit that on January 28 and February 2, 2005, Woodard submitted memoranda in which she complained about Romeo's conduct.

64. Admit the allegations in paragraph 64 of the Complaint.

65. Deny the allegations in paragraph 65 of the Complaint, except admit that Camp was an Interim Sales Manager in or around February 2005. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegation that Woodard became the only Account Manager assigned to Camp.

66. Deny the allegations in paragraph 66 of the Complaint; except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Woodard asked Camp for guidance; and that Camp referred Woodard to Gall.

67. Deny the allegations in paragraph 67 of the Complaint.

68. Deny the allegations in paragraph 68 of the Complaint.

69. Deny the allegations in paragraph 69 of the Complaint, except admit that Woodard scheduled sales calls.

70. Deny the allegations in paragraph 70 of the Complaint, except deny knowledge or information sufficient to form a belief as to the allegation that Gall offered clients discounted rates without informing Woodard.

71. Deny the allegations in paragraph 71 of the Complaint, except admit on April 18, 2005, Gall issued Woodard a memorandum that raised criticisms of Woodard's performance, and that scheduled a formal performance review for May 12, 2005.

72. Deny the allegations in paragraph 72 of the Complaint.

73. Deny the allegations in paragraph 73 of the Complaint.

74. Deny the allegations in paragraph 74 of the Complaint.

75. Deny the allegations in paragraph 75 of the Complaint.

76. Admit the allegations in paragraph 76 of the Complaint.

77.     Admit the allegations in paragraph 77 of the Complaint.

## ELISE LAWLESS

78.     Admit the allegations in paragraph 78 of the Complaint.

79.     Deny the allegations in paragraph 79 of the Complaint; except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Lawless received raises from 1999 to 2004.

80.     Deny the allegations in paragraph 80 of the Complaint.

81.     Deny the allegations in paragraph 81 of the Complaint.

82.     Deny the allegations in paragraph 82 of the Complaint, except admit that in 2004 Woodard complained about certain comments allegedly made by Celt; that in 2005 Woodard complained about certain comments allegedly made by Romeo; and that Woodard filed an EEOC Charge in June 2005.

83.     Deny knowledge or information sufficient to form a belief as to truth of the allegation in paragraph 83 of the Complaint, except admit that Woodard identified Lawless as a witness in support of her EEOC Charge.

84.     Deny the allegations in paragraph 84 of the Complaint, except admit that Meena Bhiro was a TWCMS female employee. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegation that Bhiro is of Guyanese descent.

85.     Deny the allegations in paragraph 85 of the Complaint, except admit that TWCMS granted Lawless' request to telecommute during the last two weeks of her pregnancy in August 2005, and that Katherine Cachola was Lawless' co-worker. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegations that on August 11, 2005, Lawless suffered contractions at work; that Lawless called her doctor and

scheduled an appointment for that day; that Cachola accompanied Lawless to her doctor's office; and that Lawless' doctor advised her to cease commuting from New Jersey to New York for work.

86. Deny the allegations in paragraph 86 of the Complaint.

87. Deny the allegations in paragraph 87 of the Complaint, except admit that on August 18, 2005, Lawless sent Sawyer an email regarding her pregnancy and medical condition. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegation that prior to August 18, 2005, Lawless was not planning to commence her leave of absence until on or about September 6, 2005.

88. Deny the allegations in paragraph 88 of the Complaint, except admit that Lawless commenced a maternity leave on or about August 29, 2005.

89. Deny the allegations in paragraph 89 of the Complaint.

90. Deny the allegations in paragraph 90 of the Complaint.

91. Deny the allegations in paragraph 91 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Lawless' actual sales figures reflected that she was on track to achieve or exceed her goals.

92. Deny the allegations in paragraph 92 of the Complaint.

93. Admit the allegations in paragraph 93 of the Complaint.

94. Deny the allegations in paragraph 94 of the Complaint.

95. Deny the allegations in paragraph 95 of the Complaint, except admit that TWCMS hired Maloney as an Account Manager in January 2006. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegation that when Lawless returned from leave, she noticed a vacant window-area workstation and requested it.

96. Deny the allegations in paragraph 96, except admit that Lawless received a performance evaluation in December 2005, which raised criticisms of her performance and placed her on a performance improvement action plan; and that Lawless had not previously been placed on a performance improvement action plan during her employment.  Defendants further answer and aver that Lawless had received a Formal Performance Warning in April 2003 and sub-standard performance reviews for work performed in 2004 and 2005.

97. Deny the allegations in paragraph 97 of the Complaint.

98. Deny the allegations in paragraph 98 of the Complaint.

99. Deny the allegations in paragraph 99 of the Complaint, except admit that Lawless received two performance warnings, dated January 23 and January 27, 2006 that raised criticisms of her performance.

100. Deny the allegations in paragraph 100 of the Complaint, except admit that Lawless filed a Charge of Discrimination with the EEOC in January 2006, which TWCMS did not receive until February 2006.

101. Deny the allegations in paragraph 101 of the Complaint, except admit that Lawless met with Klein on February 15, 2006 concerning her complaints against TWCMS; and that in February 2006, Lawless met with Chang  at Change's offices in Atlanta, Georgia regarding her EEOC Charge.

102. Deny the allegations in paragraph 102 of the Complaint.

103. Admit the allegations in paragraph 103 of the Complaint.

104. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of the Complaint.

105. Deny the allegations in paragraph 105 of the Complaint.

106. Deny the allegations in paragraph 106 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that in or around March 2006, Lawless closed about $1.1 million in business.

107. Deny the allegations in paragraph 107 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that clients called Lawless expressing concern.

108. Deny the allegations in paragraph 108 of the Complaint.

109. Admit the allegations in paragraph 109 of the Complaint.

## GENERAL

110. Deny the allegations in paragraph 110 of the Complaint, except admit that from time to time Gall would have meetings in his office with Woodard, Lawless and/or other female employees.

111. Deny the allegations in paragraph 111 of the Complaint.

112. Deny the allegations in paragraph 112 of the Complaint.

113. Deny the allegations in paragraph 113 of the Complaint.

114. Deny the allegations in paragraph 114 of the Complaint.

115. Deny the allegations in paragraph 115 of the Complaint.

116. Deny the allegations in paragraph 116 of the Complaint.

117. Deny the allegations in paragraph 117 of the Complaint.

118. Deny the allegations in paragraph 118 of the Complaint.

119. Deny the allegations in paragraph 119 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that after Woodard's termination, Gall attended a client meeting with Monson and Artcher.

120. Deny the allegations in paragraph 120 of the Complaint.

## COUNT ONE (TITLE VII)

121. Repeat and reallege the answers to paragraphs 1 through 120 of the Complaint as if fully set forth herein.

122. Deny the allegations in paragraph 122 of the Complaint, except admit that Plaintiffs purport to set forth a claim under Title VII.

123. Deny the allegations in paragraph 123 of the Complaint.

124. Deny the allegations in paragraph 124 of the Complaint.

125. Deny the allegations in paragraph 125 of the Complaint.

126. Deny the allegations in paragraph 126 of the Complaint.

127. Deny the allegations in paragraph 127 of the Complaint.

128. Deny the allegations in paragraph 128 of the Complaint.

129. Deny the allegations in paragraph 129 of the Complaint.

130. Deny the allegations in paragraph 130 of the Complaint.

## COUNT TWO (SECTION 1981)

131. Repeat and reallege the answers to paragraphs 1 through 130 of the Complaint as if fully set forth herein.

132. Deny the allegations in paragraph 132 of the Complaint, except admit that Plaintiffs purport to set forth a claim under Section 1981.

133. Deny the allegations in paragraph 133 of the Complaint.

134. Deny the allegations in paragraph 134 of the Complaint.

135. Deny the allegations in paragraph 135 of the Complaint.

136. Deny the allegations in paragraph 136 of the Complaint.

137. Deny the allegations in paragraph 137 of the Complaint.

## COUNT THREE (NYSHRL)

138. Repeat and reallege the answers to paragraphs 1 through 137 of the Complaint as if fully set forth herein.

139. Deny the allegations in paragraph 139 of the Complaint, except admit that Plaintiffs purport to set forth a claim under the NYSHRL.

140. Deny the allegations in paragraph 140 of the Complaint.

141. Deny the allegations in paragraph 141 of the Complaint.

142. Deny the allegations in paragraph 142 of the Complaint.

143. Deny the allegations in paragraph 143 of the Complaint.

144. Deny the allegations in paragraph 144 of the Complaint.

145. Deny the allegations in paragraph 145 of the Complaint.

146. Deny the allegations in paragraph 146 of the Complaint.

## COUNT FOUR (NYCHRL)

147. Repeat and reallege the answers to paragraphs 1 through 146 of the Complaint as if fully set forth herein.

148. Deny the allegations in paragraph 148 of the Complaint, except admit that Plaintiffs purport to set forth a claim under the NYCHRL.

149. Deny the allegations in paragraph 149 of the Complaint.

150. Admit the allegations in paragraph 150 of the Complaint.

151. Deny the allegations in paragraph 151 of the Complaint.

152. Deny the allegations in paragraph 152 of the Complaint.

153. Deny the allegations in paragraph 153 of the Complaint.

154. Deny the allegations in paragraph 154 of the Complaint.

155. Deny the allegations in paragraph 155 of the Complaint.

156. Deny the allegations in paragraph 156 of the Complaint.

157. Deny the allegations in paragraph 157 of the Complaint.

PRAYER FOR RELIEF

158. Deny that Plaintiffs are entitled to any of the relief demanded in the Wherefore clauses or any relief whatsoever.

**DEFENSES**

The statement of any defense hereafter does not assume the burden of proof for any issue as to which applicable law places the burden on Plaintiffs.

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

The Complaint is barred, in whole or in part, by the applicable statute of limitations.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims for relief are barred, in whole or in part, by virtue of their own conduct.

**FOURTH AFFIRMATIVE DEFENSE**

The Complaint is barred, in whole or in part, by the doctrines of laches, estoppel and waiver.

**FIFTH AFFIRMATIVE DEFENSE**

The Complaint is barred, in whole or in part, because Plaintiffs failed to exhaust all administrative remedies before filing suit.

**SIXTH AFFIRMATIVE DEFENSE**

If Plaintiffs have suffered damages, which Defendants expressly deny, upon information and belief, Plaintiffs have failed to make reasonable and diligent efforts to mitigate their damages.

**SEVENTH AFFIRMATIVE DEFENSE**

Defendants' actions with respect to Plaintiffs were taken solely for legitimate, non-discriminatory, non-retaliatory, non-prohibited reasons and/or for good cause.

**EIGHTH AFFIRMATIVE DEFENSE**

At all relevant times, including prior to the allegations that form the basis of Plaintiffs' claims, Defendants had established and complied with policies, programs, and procedures for the detection, prevention and remediation of unlawful employment practices.

**NINTH AFFIRMATIVE DEFENSE**

At all relevant times, including prior to the allegations that form the basis of Plaintiffs' claims, Defendants exercised reasonable care to prevent and correct promptly any harassing behavior.  Plaintiffs unreasonably failed to avail themselves of an internal grievance policy with respect to claims of discrimination, harassment and retaliation.

**TENTH AFFIRMATIVE DEFENSE**

The Complaint against TWC is barred, in whole or in part, because TWC was not the employer of Plaintiffs.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs were not qualified individuals with a disability as defined by the Americans with Disabilities Act, the New York State Human Rights Law, or the New York City Human Rights Law.

**TWELFTH AFFIRMATIVE DEFENSE**

If and to the extent that any action taken with respect to Plaintiffs was motivated by an impermissible consideration, which Defendants expressly deny, Defendants would have taken the same action for lawful, non-discriminatory reasons.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to punitive damages because Defendant's conduct was not motivated by evil motive or intent nor was Defendants' conduct in reckless indifference to the federally protected rights of Plaintiffs.  To the extent that any of Defendants' agents acted with such evil motive or intent, or reckless indifference to the federally protected rights of Plaintiffs, which Defendants expressly deny, such actions were contrary to Defendants' good-faith efforts to enforce its antidiscrimination policy.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to punitive damages under the New York State Executive Law and to the extent that they seek punitive damages under the New York City Administrative Code, such relief is barred because Defendants' alleged conduct did not rise to the required level of culpability to justify and award of such damages.

**FIFTEENTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiffs seek to recover damages from Defendants for personal injuries, emotional distress and/or mental anguish incurred in the course of or arising out of their alleged employment with Defendants, such recovery is barred by the exclusive remedy provisions of the New York State Workers' Compensation Law.

**SIXTEENTH AFFIRMATIVE DEFENSE**

The Complaint or any relief sought by Plaintiffs is barred, in whole or in part, by such additional defenses as Defendants may have that cannot now be articulated due to the generality of Plaintiffs' pleadings and the fact that discovery has not yet commenced. Accordingly, Defendants reserve the right to supplement the foregoing and to raise additional defenses as the case progresses.

**WHEREFORE**, Defendants respectfully request that this Court dismiss the Complaint with prejudice and award Defendants their costs, including reasonable attorneys' fees, and such other relief as this Court may deem just and proper.

Dated:  New York, New York
       June 18, 2009

    VEDDER PRICE P.C.

    By:   /s/ Laura Sack
       Laura Sack (LS 5501)
       Roy P. Salins (RS 0793)
    1633 Broadway, 47th Floor
    New York, New York 10019
    (212) 407-7700
    Attorneys for Defendants