Kenneth A. Goldberg, Esq.
Goldberg & Fliegel LLP
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CLAUDIA WOODARD AND ELISE LAWLESS,

               :

             Plaintiffs,

               :    09 CIV 3000

      - against -

               :

TWC MEDIA SOLUTIONS, INC. and
THE WEATHER CHANNEL,

               :

             Defendants.    :

               x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFF WOODARD'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT IS EXTREMELY
RIGOROUS, PARTICULARLY IN DISCRIMINATION ACTIONS . . . . . . . . . . . . . . . 7

II.     THE COURT SHOULD GIVE SUBSTANTIAL WEIGHT TO EEOC'S FINDINGS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.   THE COURT SHOULD DENY DEFENDANTS' MOTION ON  MS. WOODARD'S
SEX DISCRIMINATION CLAIMS BECAUSE THEY WERE TIMELY FILED . . . . . 11

IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON MS. WOODARD'S CLAIMS OF UNLAWFUL DISCHARGE . . . . 13

        A.    Standards For Claims Of Discrimination And Retaliation  . . . . . . . . . . . . . . . . 13

        B.    Defendants' Job Performance Argument Is Baseless  . . . . . . . . . . . . . . . . . . . . 13

        C.    Defendants' Causal Connection Argument Is Baseless . . . . . . . . . . . . . . . . . . 15

        D.    Defendants' Pretext Argument Is Baseless  . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              1.    Ms. Woodard Has Substantial Evidence Of Pretext  . . . . . . . . . . . . . . . 17

              2.    The "Same Actor" Defense Is Inapplicable . . . . . . . . . . . . . . . . . . . . . . 20

V.     THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT REGARDING CLAIMS OF DISCRIMINATION IN COMPENSATION
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.   DEFENDANTS' MOTION AS TO  HOSTILE WORK ENVIRONMENT CLAIMS . . 22

        A.    Standard For Hostile Work Environment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        B.    Plaintiff Established A Hostile Work Environment . . . . . . . . . . . . . . . . . . . . . . 23

        C.    Defendants Are Liable For The Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VII.  THE COURT SHOULD DISREGARD DEFENDANTS'  AFFIDAVITS  . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

# TABLE OF AUTHORITIES*

## Cases

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001),  cert. denied 534 U.S. 993 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Adams v. Monroe County Department of Social Services, 21 F. Supp.2d 235 (W.D.N.Y. 1998) (Larimer, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Aulicino v. New York City Dept. of Homeless Services, 580 F.3d 73 (2d Cir. 2009) . . . . . . . 23

Aurelien v. Henry Schein, Inc., No. 07-CV-2358 (JFB)(AKT), 2009 WL 366148  (E.D.N.Y. Feb. 12, 2009) (Bianco, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999), cert. denied 530 U.S. 1242 (2000), reh'g denied 530 U.S. 1289 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Bookman v. Merrill Lynch, No. 02 Civ. 1108 (RJS), 2009 WL 1360673 (S.D.N.Y. May 14, 2009) (Sullivan, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bridges v. Eastman Kodak Co., 822 F.Supp. 1020 (S.D.N.Y. 1993) (Carter, J.) . . . . . . . . . . . 12

Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Burlington Northern & Santa Fe Ry., 548 U.S. 53 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Byrnie v. Town of Cromwell, Bd. Of Educ., 243 F.3d 93, 107 (2d Cir. 2001) . . . . . . . . . . . . . 20

Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir. 1994) . . . . . . . . . . . . . . . . . 8, 9, 24

Collins v. N.Y. City Transit Auth., 305 F.3d 113 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 13

Copeland v. Rosen, 38 F. Supp.2d 298 (S.D.N.Y. 1999) (Leisure, J.) . . . . . . . . . . . . . . . . . . . . 20

Cruz v. Coach Stores, 202 F.3d 560 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Danzer v. Norden Sys., Inc., 151 F.3d 50 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Davidson v. Time Inc., 972 F. Supp. 148 (E.D.N.Y., 1997) (Gershon, J.) . . . . . . . . . . . . . . . . . 9

Dister v. Cont'l Group, Inc., 859 F.2d 1108 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Drummer v. DCI Contracting Corp., 772 F.Supp 821 (S.D.N.Y 1991) (Sweet, J.) . . . . . . . . . 12

Dundas v. Convalescent Hospital For Children, 1995 WL 813721, No.92-CV-6005L (W.D.N.Y.

* Copies of cases found solely in electronic databases are appended hereto for the Court's convenience.

March 9, 1995) (Larimer, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Everson v. New York City Transit Authority, Civ. No. 1:02-Cv-1121-ENV-JMA, 2007 WL 539159 (E.D.N.Y. Feb. 16, 2007) (Vitaliano, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Feingold v. New York, 366 F.3d 138 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Francis v. Runyon, 928 F. Supp. 195 (E.D.N.Y. 1996) (Mishler, J.) . . . . . . . . . . . . . . . . . . . 9

Fruchter v. Sossei, No. 94 Civ. 8586 (LBS), 1996 WL 640896 (S.D.N.Y. Nov. 4, 1996) (Sand, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 13

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219 (2d Cir. 1994) . . . . . . . . 7

Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 7, 8, 25, 26

Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Heskin v. Insite Advertising, Inc., 2005 WL 407646, No. 03 Civ. 2598 GBD AJP (S.D.N.Y. February 22, 2005) (Peck, C.M.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Holcomb v. Iona College, 521 F.3d 130 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hurd v. JCB Int'l Credit Card Co., 923 F. Supp. 492 (S.D.N.Y. 1996) (Motley, J.) . . . . . . . . . 17

Kerzer v. Kingly Mfg., 156 F.3d 396 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Luongo v. Nationwide Mutual Ins. Co., No. 95 Civ. 3190 (MBM), 1996 WL 445365 (S.D.N.Y. Aug. 7, 1996) (Mukasey, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Mack v. Otis Elevator Company, 326 F.3d 116 (2d Cir. 2003), cert. denied 540 U.S. 1016 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mack v. U.S., 814 F.2d 120 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Memnon v. Clifford Chance US, LLP, 08 Civ. 2874 (HB), 2009 WL 3459188 (S.D.N.Y. Oct. 27, 2009) (Baer, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Mohan v. Target, 2009 WL 2957953 (W.D.N.Y., Sept.11, 2009) (Skretny, J.) . . . . . . . . . . . . 12

Murray v. Bd. of Educ. of City of New York, 984 F.Supp. 169 (S.D.N.Y. 1997) (Leisure, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Norton v. Sam's Club, 145 F.3d 114 (2d Cir. 1998), cert. denied 525 U.S. 1001 (1998) . . . . . . 13

Nuchman v. City of New York, No.05-CV-456, 2009 WL 1924756 (FB)(LB) (E.D.N.Y. June 30, 2009) (Block, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

iii

Philbrook v. Ansonia Board of Education, 757 F.2d 476 (2d Cir. 1985), aff'd and remanded on other grounds, 479 U.S. 60 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ramos v. Marriott Int'l, Inc., 134 F. Supp.2d 328, 345-46 (S.D.N.Y. 2001) (Conner, J.) . . . . . . 20

Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . 7, 10

Richardson v. N.Y.S. Dept. of Corr., 180 F.3d 426 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 23

Rosen v. Thornburgh, 928 F.2d 528 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24

Scott v. IBM Corp., 196 F.R.D. 233 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Shapiro v. Cadman Towers, Inc., 844 F. Supp. 116 (E.D.N.Y. 1994) (Sifton, J.), aff'd 51 F.3d 328 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sowemimo v. D.A.O.R. Security, Inc., 43 F. Supp.2d 477 (S.D.N.Y. 1999) (Carter, J.) . . . . . . 23

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Dept. Of Community Affairs v. Burdine, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . 9

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 620 (2d Cir. 2000) . . . . . . . . . . . . . . . 23

Wilson v. N.Y.C. Dep't of Trans., 2005 WL 2385866, No. 01 Civ. 7398(RJH) (S.D.N.Y., Sept. 28, 2005) (Holwell, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp.2d 483 (S.D.N.Y. 2005) (Sweet, J.), reconsideration denied 2006 WL 1489245, No. 03 Civ. 0257 (S.D.N.Y. May 30, 2006) (RWS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes**

42 U.S.C. § 2000e-5(e) (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Federal Regulations**

29 C.F.R. § 1601.12(b) (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

29 C.F.R. § 1601.21 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Federal Rules**

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## PRELIMINARY STATEMENT

Plaintiff, Claudia Woodard ("Ms. Woodard") submits this memorandum of law in opposition to Defendants' motion for summary judgment regarding her claims. No motion was filed regarding Plaintiff Lawless. For the reasons set forth below and in Plaintiff's Statement Of Disputed Material Facts Pursuant To Local Rule 56.1 ("Plaintiff's Statement of Facts" or "Pl. Stmnt.") the Court should deny Defendants' motion. This is a case about an employer that discriminates and retaliates against women and minorities, and about two brave women – Claudia Woodard and Elise Lawless – who opposed that conduct only to be unlawfully fired. Plaintiffs have claims for discrimination based on sex, pregnancy, race, color, and national origin and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 et seq., the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

Ms. Woodard joined Defendants in or about June 2004, following a successful career at The Wall Street Journal. (Pl. Stmnt. Point II-A). Her initial supervisor, Meade Camp, had repeatedly made statements to the effect that he would only hire a "black woman" for that position and Ms. Woodard was that hire. Ms. Woodard was resented because she is a black female and Jamaican. Paul Celt, a white male co-worker, made discriminatory comments. In August 2004, Ms. Woodard, now an Account Manager, filed a complaint of discrimination against Celt with her new supervisor, Mark Gall (head of the New York office). Rather than cure the discrimination, Mr. Gall, who ran a "boys club", himself made discriminatory comments to Ms. Woodard. Mr. Gall assigned Ms. Woodard an exceedingly high revenue goal for 2005 and, in October 2004, Mr. Gall assigned Ms. Woodard what was essentially a "dead account" list that would make it virtually impossible for her to meet her 2005 goals. In November 2004, Ms. Woodard was assigned a new direct supervisor, Mary Jo Romeo, who reported directly to Mr. Gall. Ms. Romeo told Ms. Woodard that she was playing in Mr. Gall's "sand box" and also

1

made discriminatory comments to Ms. Woodard, consistent with the harassing comments made by Mr. Gall.  (Pl. Stmnt. Points II-A to D).  In early December 2004, Ms. Woodard received a negative performance evaluation that raised false criticisms of her job performance, followed by a compensation package for 2005 that included a decrease in base salary and no raise, while the white male Account Managers all received raises for 2005, including Mr. Celt and others.  (Pl. Stmnt. Points II-E, II-F).  Plaintiffs demanded that Defendants produce all 2004 evaluations for other Account Managers, but Defendants failed to do so, alleging that such documents could not be located, even though Defendants admit that evaluations are retained on their computer system and in personnel files.  In January 2005, Ms. Woodard filed internal complaints with Pam Sawyer (HR), Paul Iaffaldano, EVP of Sales (Mr. Gall's supervisor), and Mary Jo Romeo, regarding Ms. Romeo and the discriminatory and retaliatory evaluation and compensation package.  (Pl. Stmnt. Points II-G to II-I).  Within two months, Mr. Iaffaldano advised Mr. Gall that he wanted Ms. Woodard to be fired.  (Pl. Stmnt. Points II-J, II-K).  There was no valid basis to fire Ms. Woodard so Mr. Gall, with the assistance of Pam Sawyer, drafted and issued to Ms. Woodard an unwarranted written warning on April 18, 2005 to set her up for unlawful discharge.  (Pl. Stmnt. Point II-L).  On April 22, 2005, Ms. Woodard filed a rebuttal to the unwarranted warning and was immediately fired.  (Pl. Stmnt. Points II-M to II-P).  Ms. Woodard timely filed an EEOC Charge and following a detailed, lengthy investigation, the EEOC found Defendants to be in violation of the law.  (Pl. Stmnt. Points II-Q; Goldberg Cert. Exhs. U, V).  There are other victims such as Plaintiff Lawless.  (Pl. Stmnt. II-R).  Defendants concede that Ms. Lawless is entitled to a trial.

Defendants' motion is limited to Ms. Woodard's claims and that motion must be denied. Defendants argue that Ms. Woodard was terminated for alleged performance deficiencies. Defendants' argument is contradicted by Ms. Woodard's actual performance and praise she received, Ms. Woodard's production at the time of her termination, and relevant testimony and documents.  The parties conducted numerous depositions and produced voluminous documents.

2

Defendants' motion ignores the wealth of testimony and documents supporting Ms. Woodard's claims and instead relies primarily on affidavits of co-workers alleging they saw no wrongdoing and were treated fairly, and affidavits of former managers containing alleged statements of clients that are inadmissible hearsay.  The timing of Defendants' actions after Ms. Woodard's complaints and the EEOC Determinations are powerful evidence mandating a trial.  At a minimum, there are various material issues of disputed fact, including (1) when the decision was made to fire Ms. Woodard; (2) who made the decision; and (3) who made the decision to deny Ms. Woodard a raise for 2005.  Notably, Mark Gall testified that the decision to fire Ms. Woodard was made by Paul Iaffaldano.  (Pl. Stmnt. Points II-F & ¶ 284, II-N & ¶ 339).  This contradicts Defendants' assertion that the decision to fire Ms. Woodard was made by Mark Gall, Paul Iaffaldano and Meade Camp in consultation with HR. (Def. Stmnt. ¶ 148).  There is documentation indicating that the decision to fire Ms. Woodard was made by March 28, 2005 (Pl. Stmnt. Point II-K, ¶ 314).  This contradicts Defendants' assertion that the decision to fire Ms. Woodard was made after an April 18, 2005 warning. (See Def. Stmnt. ¶ 132-150).

## FACTS

The Court is referred to Plaintiff's Statement Of Facts and the documents cited therein, (attached to the certification of Plaintiff's counsel).  Set forth below is a brief overview.

Ms. Woodard is an African American female of Jamaican national origin.  In or about June 2004, she joined Defendants as a Client Development Manager ("CDM") after a successful career at The Wall Street Journal.  She initially reported to Meade Camp ("Camp"), Senior Vice President for Client Development.  (Pl. Stmnt. Point II-A). Mr. Camp repeatedly made statements to the effect that he would only hire a black woman for Ms Woodard's position and did so.  In or about August 2004, Ms. Woodard was transferred to the position of Account Manager, reporting to Mark Gall, Senior Vice President for Eastern Regional Sales ("Gall"), and a Caucasian male.  Gall told Ms. Woodard that it would still take approximately 16 months to fully transition to the Account Manager position.  During the first 8 weeks of Ms. Woodard's

3

employment, she witnessed that Paul Celt, a white male Account Manager, made discriminatory comments about Jamaicans.  Celt made such comments before Ms. Woodard was ever hired and Mr. Gall was aware of the comments and never attempted to stop them.  (Gordon Aff. ¶ 1-7).  On August 18, 2004, Ms. Woodard filed an internal complaint about Mr. Celt.  When she discussed the complaint with Mr. Gall, he  made discriminatory comments to her (Pl. Stmnt. Point II-B):

\*      Gall told Ms. Woodard that Jamaicans do not have a strong work ethic.

\*      Gall told Ms. Woodard that Jamaicans think they are better than other blacks but they are not better.

\*      Gall told Ms. Woodard that he used to be a "big brother" for inner city black boys and that all they wanted to do was to sow their seed and have babies with several women in order to prove their masculinity.

In or about mid October 2004, Defendants gave Ms. Woodard, now an Account Manager, a "dead list" of accounts and agencies to call upon.  Defendants provided superior account lists to Account Managers outside Ms. Woodard's protected classes including among others Craig Meadow and Peter Wright (hired in March 2005).  (Pl. Stmnt. Point II-C).  In November 2004, Defendants hired Mary Jo Romeo (Caucasian) for the position of Vice President and Regional Manager, reporting to Gall.  Defendants assigned Ms. Woodard to report to Romeo.  Romeo made discriminatory and harassing comments to Ms. Woodard (Pl. Stmnt. Point II-B):

\*      Romeo said Ms. Woodard was hired because of a diversity initiative, i.e., she was only hired for cosmetic purposes, to fill some alleged quota.

\*      Romeo said she once had to pay a recruiter to find a diversity candidate because she couldn't find one otherwise, and that it was very difficult for her to waste company money on that recruiter.  Romeo was essentially telling Ms. Woodard that she didn't want to hire someone of Ms. Woodard's protected classes and didn't want to spend money to do so.

\*      Romeo told Ms. Woodard that black women have problems speaking up and asking

4

questions because they do not want to appear stupid.  Romeo was essentially degrading all black women.

\*     While driving to a client meeting, Romeo and Ms. Woodard passed through Paterson, New Jersey, which is predominantly Black and Hispanic.  Romeo asked how people could live there.  Ms. Woodard reminded Romeo that Ms. Woodard was born in Jamaica and raised in Paterson.  Romeo asked Ms. Woodard what language is spoken in Jamaica.  Ms. Woodard said English and Romeo said she speaks good English.

In December 2004, Defendants gave Ms. Woodard a performance evaluation that raised false criticisms of her job performance.  Defendants failed to produce 2004 evaluations for Ms. Woodard's peer group of white male Account Managers, even though Defendants admit they retain such documents on their computer system and in personnel files.  Those evaluations are highly relevant, since Defendants allege that evaluations affect compensation. (Pl. Stmnt. Point II-E).  Defendants gave Ms. Woodard a compensation package for 2005 that cut her base salary by more than 20% and kept her overall compensation (at goal) flat.  At the same time, Defendants gave raises to Ms. Woodard's peer group of white male Account Managers and continued to do so in 2005 and beyond, including among others Craig Meadow,  Paul Celt, Matt Derella, Peter Wright (hired in March 2005) and Bruce Budkofsky. Celt had made discriminatory comments and several employees rummaged through Woodard's desk.  (Pl. Stmnt. Point II-F).

In early January 2005, Ms. Woodard filed several written complaints about her 2004 evaluation and 2005 compensation package.  Defendants did not take any remedial action.  Instead, Defendants allowed the discrimination/retaliation to continue.  Defendants gave conflicting testimony as to who made the decision to cut Ms. Woodard's base salary and keep her overall compensation package flat.  Various witnesses testified that Mr. Gall was directly involved in the decision.  Mr. Gall testified that he was not involved in compensation decisions.  This is an issue of fact for trial.  (Pl. Stmnt. Points II-G, II-H).

On or about January 28, 2005, Ms. Woodard filed a written complaint of discrimination

about Ms. Romeo's unlawful conduct.   In February 2005, Romeo separated from Defendants. Defendants allege that Ms. Romeo was separated in part because of Ms. Woodard's complaint. However, according to Ms. Romeo, she advised that her separation had nothing to do with Ms. Woodard but rather stemmed from complaints by others. (Pl. Stmnt. Point II-I).   Defendants assigned Ms. Woodard to report to Camp, an Interim Sales Manager, and the same person that had announced that he had to hire a "black woman" for Ms. Woodard's position.   Ms. Woodard was covering what was essentially a "dead list" of accounts and sought support from Mr. Gall and Mr. Camp.   None was provided.   Ms.   Woodard sought to schedule meetings with clients and Defendants canceled them.   Rick Monihan, Director of Planning and Inventory told Ms. Woodard she was set up by Defendants to fail.   In the Spring of 2005, Mr. Monihan complained about a lack of support for Ms. Woodard. No remedial action was taken.   (Pl. Stmnt. Point II-J).

On or about March 28, 2005, Mr. Iaffaldano, Executive Vice President, advised Mr. Gall that he wanted Ms. Woodard to be fired and proposed dates.   Mr. Iaffaldano had received Ms. Woodard's complaints about her compensation and evaluation and was undoubtedly aware of her prior complaints regarding Mr. Celt and Ms. Romeo, through his direct report Mr. Gall and Ms. Sawyer (Director, HR).(Pl. Stmnt. Point II-K).   On or about April 18, 2005, Defendants, through Gall, issued a memorandum to Ms. Woodard raising false criticisms of her performance and threatening her employment.   The April18 memorandum was a bogus document, created to "set up" Ms. Woodard for discharge pursuant to Mr. Iaffaldano's statements about firing Ms. Woodard.   Gall's memorandum stated that Plaintiff had until May 12, 2005 to achieve certain goals and that her performance would be reviewed at that time.   Defendants never intended to allow Ms. Woodard to meet any of the alleged goals.   (Pl. Stmnt. Point II-L).

On or about April 22, 2005, Ms. Woodard filed a written response to the April 18, 2005 memorandum and rebutting the points therein.   Defendants then unlawfully terminated Ms. Woodard's employment.   As of April 22, 2005, Ms. Woodard was tracking at 116.9% of her sales goal for the second quarter of 2005 and was performing as well or better than several of her

peers of white male Account Managers.  She was never given the opportunity to meet the alleged

goals stated in the April 18 memorandum.  Mr. Gall testified that he was not a decisionmaker in

the termination of Ms. Woodard and that the decision was made by Paul Iaffaldano.  This

testimony is contradicted by other testimony and documents.  (Pl. Stmnt. Points II-M to II-P).

In June 2005, Ms. Woodard filed an EEOC Charge and supplemented same.   The EEOC

investigated and, in or about August 2008, issued a Determination in Ms. Woodard's favor.  In

addition to Ms. Woodard, there are other victims of discrimination and retaliation, including

Plaintiff Lawless, Jen Monson, Meena Bhiro, Courtney Kurland and Catherine Jolly.  As noted

above, Plaintiff Lawless also filed an EEOC Charge.  The EEOC conducted a detailed

investigation and, in August 2008, the EEOC issued a Determination in Ms. Lawless's favor.

(Pl. Stmnt. Points II-Q, II-R; Goldberg Cert., Exhs. U through Z).

## ARGUMENT

## I.   THE RIGOROUS STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

The standard for a motion for summary judgment is extremely rigorous, particularly in

discrimination cases.  Summary judgment cannot be granted unless "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  In deciding Defendants' motion, this Court must resolve all ambiguities and draw all

reasonable inferences in Ms. Woodard's favor and against Defendants.  This Court does not

attempt to resolve disputed issue of fact; rather the Court must simply assess whether there are

factual issues to be tried.  This Court cannot grant summary judgment if there is any evidence in

the record from any source from which a reasonable inference could be drawn in favor of Ms.

Woodard.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149-150 (2000).

Summary judgment is inappropriate in discrimination actions where, as here, intent and

state of mind are at issue.  See, e.g.,  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000);

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-1224 (2d Cir. 1994).

In addition, the Second Circuit has also emphasized that direct evidence is not required in discrimination actions.  Ms. Woodard can defeat Defendants' summary judgment motion and prevail at trial based solely on circumstantial evidence.  Graham, 230 F.3d 34, 38; Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994); Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991).  "In an employment discrimination case when . . . the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).  Ms. Woodard need not have any "smoking gun" evidence and, in fact, can defeat Defendants' motion based solely on circumstantial evidence. Rosen, 928 F.2d 528, 533; Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1112 (2d Cir. 1988). Because an intent inquiry is fact-specific and requires close attention to the evidence and credibility of witnesses, summary judgment is often inappropriate in employment discrimination cases. Rosen, 928 F.2d at 533."  Everson v. New York City Transit Authority, Civ. No. 1:02-Cv-1121-ENV-JMA, 2007 WL 539159, at *9 (E.D.N.Y. Feb. 16, 2007) (Vitaliano, J.).

      The Second Circuit has repeatedly stated that trial courts must be cautious about granting summary judgment and recently stated: "We have repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent . . . 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Holcomb v. Iona College, 521 F.3d 130, 137 (2nd Cir. 2008).  Here, the deposition testimony and documents overwhelmingly provide more than sufficient evidence to show discrimination and retaliation.  Summary judgment is inappropriate where there is a disputed issue of fact regarding the employer's alleged reasons for the challenged actions.  Nuchman v. City of New York, No.05-CV-456, 2009 WL 1924756 (FB)(LB), at *3 (E.D.N.Y. June 30, 2009) (Block, J.) (denying employer's motion for summary judgment on disparate treatment claim involving demotion where plaintiff adduced evidence that employer treated persons outside the protected class more favorably and  demonstrated a disputed issue of fact regarding the employer's alleged

reason for its actions).[1]  The courts have emphasized that summary judgment is "'a drastic procedural weapon because 'its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.''"  Fruchter v. Sossei, No. 94 Civ. 8586 (LBS), 1996 WL 640896, at *4 (S.D.N.Y. Nov. 4, 1996) (Sand, J.) (citation omitted).

Statements made by a decision maker can be sufficient evidence to deny summary judgment.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001), cert. denied 534 U.S. 993 (2001) (quoting Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998)); see also Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483, 508 (S.D.N.Y. 2005) (Sweet, J.), reconsideration denied 2006 WL 1489245, No. 03 Civ. 0257 (S.D.N.Y. May 30, 2006) (RWS).  A plaintiff's affidavit can have the same effect.  Davidson v. Time Inc., 972 F. Supp. 148 (E.D.N.Y. 1997) (Gershon, J.) (A material issue of fact may be revealed by a party's sworn affidavit that amplifies or explains but does not contradict prior testimony, especially where the party was not asked precise questions to elicit the amplification or explanation). Pretext may be demonstrated either by the presentation of additional evidence showing that `the employer's proffered explanation is unworthy of credence,' [ . . . ] or by reliance on the evidence comprising the prima facie case, without more [. . . . ]" Chambers, 43 F.3d 29, 38 (quoting Tex. Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981), citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)). Ms. Woodard has also established pretext by demonstrating that similarly situated employees were treated differently than she was. See Francis v. Runyon, 928 F. Supp. 195, 202 (E.D.N.Y. 1996) (Mishler, J.)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973)). Moreover, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. 133.

## II.    THE COURT SHOULD GIVE SUBSTANTIAL WEIGHT TO EEOC'S FINDINGS

---

[1]In Nuchman, the Court granted summary judgment on certain other claims.  Nuchman is distinguishable on its facts. In that respect, Nuchman is distinguishable on its facts.

Defendants ask this Court to ignore the EEOC's findings of probable cause in this matter. (Def. Br. Point V). Defendants' argument is baseless. In June 2005, Ms. Woodard filed an EEOC Charge. In January 2006, Ms. Lawless filed an EEOC Charge. The EEOC conducted a detailed and thorough investigation and, in August 2008, the EEOC issued findings of probable cause in favor of both Plaintiffs. (Pl. Stmnt. Point II-Q; Goldberg Cert. Exhs. U, V).

As to Ms. Woodard, the EEOC stated among other items:

*       The evidence shows that during Charging Party's ten month employment with Respondent she made two separate complaints of discrimination based on race and national origin.

*       Charging Party was given a "Confidential Memorandum" regarding performance issues and four days later was terminated for not following an order.

*       Given the above-described incidents, there is sufficient evidence to believe that Charging Party was subjected to a hostile work environment because of her sex, race, national origin, and in retaliation for her internal complaints of discrimination, in violation of Title VII.

(Pl. Stmnt. Point II-Q; Goldberg Cert., Exh. U).

Plaintiff maintains that the EEOC's findings of probable cause as to both Plaintiffs are admissible at trial as evidence and should be given substantial weight in denying Defendants' motion for summary judgment. Philbrook v. Ansonia Board of Education, 757 F.2d 476, 481 (2d Cir. 1985), aff'd and remanded on other grounds, 479 U.S. 60 (1986); Shapiro v. Cadman Towers, Inc., 844 F. Supp. 116, n. 10 (E.D.N.Y. 1994) (Sifton, J.), aff'd 51 F.3d 328 (2d Cir. 1995); Adams v. Monroe County Department of Social Services, 21 F. Supp.2d 235 (W.D.N.Y. 1998) (Larimer, J.); Dundas v. Convalescent Hospital For Children, 1995 WL 813721, No.92-CV-6005L (W.D.N.Y. Mar. 9, 1995) (Larimer, J.). Defendants argue that EEOC's investigation was flawed or that additional witnesses should have been interviewed. (Def. Br. 24-25). This is frivolous. Defendants were represented by counsel and had every opportunity to

10

submit documents and information to, and communicate extensively with, the EEOC during the EEOC's extensive, multi-year investigation. Defendants apparently did not file a request for reconsideration of the EEOC's Determinations. 29 C.F.R. § 1601.21. (Pl. Stmnt. Point II-Q).

## III.   THE COURT SHOULD DENY DEFENDANTS' MOTION ON MS. WOODARD'S SEX DISCRIMINATION CLAIMS BECAUSE THEY WERE TIMELY FILED

Defendants argue that Ms. Woodard's claims of sex discrimination are time barred alleging that they were not raised in her June 2005 EEOC Charge. (Def. Br. Point VI). Defendants' argument is frivolous and was considered and notably rejected by the EEOC. Ms. Woodard's gender discrimination claims are timely and she satisfied the preconditions to bringing a private civil action against Defendants under Title VII. 42 U.S.C. § 2000e-5(e) (2009). In June 2005, well within the EEOC's 300-day charge filing period, Ms. Woodard filed an EEOC Charge and timely asserted her gender discrimination claims. (Pl. Stmnt. Point II-Q).

In her June 2005 EEOC Charge, Ms. Woodard sufficiently alleged gender discrimination by stating that she complained of her supervisor's insistence that black "women have problems speaking up and asking questions because they do not want to appear stupid," and by beginning her EEOC Charge by declaring that she was a "female" – a declaration that has relevance specifically to Plaintiff's claims of sex discrimination and gender bias. (Pl. Stmnt. Point II-Q) (emphasis supplied). This June 2005 EEOC Charge satisfied the applicable EEOC requirement to be "sufficiently precise to [ . . . ] describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Further, between the date Ms. Woodard filed her EEOC Charge and the end of July 2005, she and her then counsel met with EEOC investigator Samanthia Canary. Ms. Canary interviewed Ms. Woodard and stated that Ms. Canary considered gender-based discrimination to be one of Ms. Woodard's claims to be investigated. As a matter of law, Ms. Woodard's allegations in her June 2005 EEOC Charge constitute a valid gender discrimination claim under the Second Circuit's "loose pleading" standard applicable to EEOC charges, because such statements would (and did) alert the EEOC to Woodard's gender discrimination claim and would (and did) fall within the scope of the EEOC investigation that would arise from her

11

charge. See, e.g., Aurelien v. Henry Schein, Inc., No. 07-CV-2358 (JFB)(AKT), 2009 WL 366148, at *6  (E.D.N.Y.  Feb. 12, 2009) (Bianco, J.) (denying employer's motion for summary judgment on Title VII gender discrimination claim where claimant's EEOC Charge alleged discrimination against a "black man" but claimant failed to check the box on the EEOC form for gender discrimination); Mohan v. Target, 2009 WL 2957953, at *4-*5 (W.D.N.Y., Sept.11, 2009) (Skretny, J.) (allowing civil action for discriminatory failure to promote although claimant's EEOC charge did not expressly allege failure to promote where "[c]onduct in violation of Title VII not alleged in an EEOC charge can reasonably fall within the scope of an EEOC investigation"); Murray v. Bd. of Educ. of City of New York, 984  F. Supp. 169, 177 (S.D.N.Y. 1997) (Leisure, J.) ("loose pleading" applied to Title VII plaintiff whose counsel assisted in the preparation and filing of EEOC charge); Bridges v. Eastman Kodak Co., 822 F. Supp. 1020, 1026 (S.D.N.Y. 1993) (Carter, J.) ("the factual allegations in an EEOC charge, rather than any legal theories stated therein, should be the focus for determining whether a cause of action is reasonably related to the plaintiff's EEOC charge"); Drummer v. DCI Contracting Corp., 772 F. Supp 821, 827 (S.D.N.Y 1991) (Sweet, J.).

Ms. Woodard's 2006 amendment to her June 2005 EEOC Charge clarified, amplified and added additional facts that relate back to the facts of gender discrimination that were alleged in the original charge. See 29 C.F.R. § 1601.12(b).  (Pl. Stmnt. Point II-Q).  The EEOC investigated  Ms. Woodard's gender discrimination claim and determined that sufficient evidence showed that Woodard "was subjected to a hostile work environment because of her sex [ . . . ]." Thus, it is clear that EEOC considered Ms. Woodard's claim of gender discrimination to be timely filed.  (Pl. Stmnt. Point II-Q; Goldberg Cert., Exh. U).  The EEOC investigation and adverse findings against Defendants on Ms. Woodard's gender discrimination are probative of the fact that such claims are properly before this Court.  Murray, 984  F. Supp. 169, 177 (that EEOC investigated employer's hiring of replacement for plaintiff is probative that failure to promote claim is "reasonably related" to the allegations in the plaintiff's EEOC charge).

12

**IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. WOODARD'S CLAIMS OF UNLAWFUL DISCHARGE**

**A.   Standards For Claims Of Discrimination And Retaliation**

Defendants seek summary judgment regarding Ms. Woodard's claims of unlawful discharge based on discrimination and retaliation.  (Def. Br. Point I).  The Court should deny Defendants' motion.  The elements of a prima facie case of discriminatory termination are: (1) plaintiff was in a protected group; (2) plaintiff was qualified for her position; (3) plaintiff was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination.  Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998), cert. denied 525 U.S. 1001 (1998).  The elements of a claim of retaliation are: (1) Plaintiff engaged in a protected activity of which the employer was aware; (2) an adverse employment action; and (3) a causal connection.  Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); accord Wilson v. N.Y.C. Dep't of Trans., 2005 WL 2385866, at *16 (S.D.N.Y., Sept. 28, 2005) (Holwell, J.) (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).  An adverse action is an action "that would have been materially adverse to a reasonable employee or job applicant," or those that would "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry., 548 U.S. 53, 57 (2006).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); see also Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  An disproportionate increase of workload can constitute an adverse action. See Feingold v. New York, 366 F.3d 138, 152-53 (2d Cir. 2004).

**B.   Defendants' Job Performance Argument Is Baseless**

Ms. Woodard has established all elements of her claims.  Defendants argue that Ms. Woodard "cannot prove that she was qualified for and satisfactorily performing her job at the time of her discharge." (Def. Br. 11).  This is baseless.

13

First, Ms. Woodard was recruited from The Wall Street Journal where she successfully performed similar advertising sales functions for over four years prior to joining Defendants. During Ms. Woodard's employment with Defendants, she received praise for her job performance from Meade Camp, Mark Gall, Mary Jo Romeo and Paul Iaffaldano, the persons that Defendants allege found her performance to be deficient.  These persons praised Ms. Woodard's job performance in 2004 and 2005.  Clearly then, Ms. Woodard establishes the prima facie element of her claims that she was qualified for her position.  (Pl. Stmnt. Point II-A, II-E & ¶ 271; Woodard Aff.).  The fact that Defendants removed Ms. Woodard from "the Pella deal" in late January 2005 (Pl. Stmnt. Point II-H) adds nothing, since this occurred shortly after Ms. Woodard had complained of discrimination and shortly after she had complained about her discriminatory 2004 performance evaluation and 2005 compensation package.  Moreover, the Pella deal closed and Ms. Woodard was paid on the deal for working on it and covering the account. (Pl. Stmnt. Point II-F, II-G).  Moreover, in December 2004, Mr. Gall himself directly praised Ms. Woodard as part of the Pella team.  (Pl. Stmnt. Point II-E & ¶ 271).

Second, on April 22, 2005, Defendants terminated Ms. Woodard's employment.  At that time, Ms. Woodard was tracking at 116.9% of her sales goal for that period.  Ms. Woodard's primary job duty was sales.  Since she was meeting and/or exceeding her sales goals at the time of her termination, she was clearly qualified for her position.  (Pl. Stmnt. Points II-M to II-O).

Third, at the time of Ms. Woodard's discharge, she was performing as well or better than several of her peers of white male Account Managers, none of whom were terminated for alleged performance reasons.  (Pl. Stmnt. Point II-O).

Fourth, Defendants' argument that clients complained about Ms. Woodard (Def. Br. 11) is based upon inadmissible hearsay.  (Pl. Stmnt. Point I, Point II-E & ¶ 271; Woodard Aff.).

Fifth, Defendants' argument that Ms. Woodard's co-workers had negative opinions of her (Def. Br. 11) adds nothing especially since those co workers are non management and non decision-makers.  (Pl. Stmnt. Point I).

14

**C.**   **Defendants' Causal Connection Argument Is Baseless**

Defendants also argue that Ms. Woodard "cannot show a causal connection between her protected activity and her discharge" with respect to her retaliation claims, noting that Ms. Woodard filed complaints of discrimination in August 2004 against Mr. Celt and in January 2005 highlighting several incidents of discrimination and retaliation regarding Ms. Romeo.  (Def. Br. 11-12).  As specified below, there is a substantial causal connection between Ms. Woodard's protected activities, and her unlawful discharge.

First, in addition to Ms. Woodard's written complaints about Paul Celt (August 18, 2004) and Mary Jo Romeo (January 28, 2005), Ms. Woodard engaged in additional protected activities. In August 2004, when Ms. Woodard complained about Mr. Celt, Mr. Gall himself made discriminatory comments and Ms. Woodard opposed that discrimination.  (Pl. Stmnt. Point II-B). In January 2005, Ms. Woodard complained to Ms. Romeo directly about Ms. Romeo's conduct towards Ms. Woodard.  (Pl. Stmnt. Point II-B).  On January 4 and 6, 2005, Ms. Woodard filed additional complaints about her 2004 performance evaluation and 2005 compensation package, raising issues about the treatment of her versus her peers.  (Pl. Stmnt. Point II-G).

Second, Defendants ignore that after Ms. Woodard engaged in protected activity, Defendants engaged in a litany of discrimination and retaliation against Ms. Woodard, including among other items; (1) assigning her a "dead list" of accounts in October 2004; (2) giving her a negative performance evaluation in December 2004; (3) giving her a compensation package for 2005 that cut her base salary more than 20% and kept her overall compensation flat, while giving raises to her peers of white male Account Managers (Pl. Stmnt. Points II-C to II-F).

Third, Defendants omit that on or about March 28, 2005, about two months after Ms. Woodard's January 2005 complaint regarding Ms. Romeo and shortly after her prior opposition, objection and complaints of discrimination, Mr. Gall advised Pam Sawyer (Director of Human Resources) that Paul Iaffaldano (Executive Vice President) wanted to terminate Ms. Woodard's employment.  This was communicated to Ms. Sawyer. (Pl. Stmnt. Point II-K).

15

Fourth, on April 18, 2005, Defendant gave Ms. Woodard a warning, to set her up for discharge based on Mr. Iaffaldano's termination directive to Mr. Gall.  Defendants officially gave Ms. Woodard a completely "dead-list" of accounts which was even worse than the essentially "dead list" she was previously assigned, while demanding that she generate revenue without the support that all other Account Managers were given. On or about April 22, 2005, Ms. Woodard filed a written response to the April 18, 2005 memorandum, rebutting the points therein.  That same day, after Mr. Gall admitted to having read Ms. Woodard's rebuttal, Defendants unlawfully terminated Ms. Woodard's employment.  As of April 22, 2005, Ms. Woodard was tracking at 116.9% of her goal for the second quarter of 2005 and was performing as well or better than several of her peers of white male Account Managers.  She was never given the opportunity to meet the alleged goals stated in the warning.  (Pl. Stmnt. Point II-L to II-O).

Defendants allege that Ms. Woodard was fired because of alleged client complaints. Such complaints are inadmissible hearsay and contradicted by praise to her.  (Pl. Stmnt. Points I, II-E & ¶ 271).  Defendants allege "dissatisfaction with her development."  However, Ms. Woodard was tracking at 116.9% to goal when she was fired.  (Pl. Stmnt. Point II-O). Defendants allege Ms. Woodard exhibited "bad judgment" in "internal and external communications."   Defendants' reference to an "internal" communication is to Ms. Woodard's April 18, 2005 email regarding account coverage, which is similar to a January 28, 2005 email that Defendants admit was proper.  (Pl. Stmnt. Point II-H & ¶ 319).  Defendants' reference to "external" communications is to Ms. Woodard advising certain clients that she was no longer covering their accounts, which Defendants admit was proper.  Defendants have no evidence that Ms. Woodard made inappropriate statements to clients.  (Pl. Stmnt. Point II-M & ¶ 323, 337-8).

The close temporal proximity between Ms. Woodard's protected activities and the retaliatory conduct gives rise to an inference of discrimination sufficient to deny Defendants' motion for summary judgment. See, e.g., Fruchter, 1996 WL 640896 at *4 (denying defendants' motions for summary judgment and dismissal , finding a "temporal proximity" between the filing

of a civil complaint in November 1994 and March 1995 performance evaluation); Hurd v. JCB Int'l Credit Card Co., 923 F. Supp. 492, 499-504 (S.D.N.Y. 1996) (Motley, J.) (denying employer's motion for summary judgment in ADEA and Title VII action alleging discrimination and retaliation where, among other items:  (1) defendant alleged that plaintiff was not promoted and was terminated due to poor job performance; (2) record contained evidence that plaintiff was qualified for her position and alleged that evaluation scheme itself was biased; (3) plaintiff denied defendants' allegations of interpersonal problems; and (4) record contained evidence that rules were selectively enforced, and (finding a temporal proximity between an EEOC charge filed in December 1993 and retaliatory acts commencing one month later, including written warning).

**D.**  **Defendants' Pretext Argument Is Baseless**

  **1.**  **Ms. Woodard Has Substantial Evidence Of Pretext**

Defendants argue that Ms. Woodard was terminated for poor job performance and that Ms. Woodard cannot establish pretext for discrimination. (Def. Br. 12-15).  This is frivolous.

First, in their brief, Defendants allege that Ms. Woodard was fired because of alleged client complaints.  Such complaints are inadmissible hearsay.  Moreover, Ms. Woodard received positive feedback from management on client matters.  (Pl. Stmnt. Point II-A & ¶ 271). Defendants allege "dissatisfaction" with her development.  However, Ms. Woodard was tracking at 116.9% to goal when she was fired and had been praised by management.  (Pl. Stmnt. Point II-O).  Defendants allege Ms. Woodard exhibited "bad judgment" in "internal and external communications."   The "internal" communication is an April 18, 2005 email regarding account coverage that is similar to her January 28, 2005 email on account coverage, which Defendants admit was proper.  (Pl. Stmnt. Point II-H & ¶ 319).  The "external" communications is Ms. Woodard advising certain clients that she was no longer covering their accounts, which Defendants admit was proper.  Defendants have no evidence that Ms. Woodard made any inappropriate statements to clients.  (Pl. Stmnt. Point II-M & ¶ 323, 337-8).  Defendants admit they did not ask the clients what Ms. Woodard said and Ms. Woodard testified that she simply

17

advised the clients that she was no longer covering their accounts (which Mr. Gall approved) and when asked to explain, gave the information that Mr. Gall had given to her.  (Id.).  Moreover, the time line of events in this action is extremely powerful evidence of pretext:

First, in 2004, Ms. Woodard's initial supervisor, Mr. Camp, repeatedly stated in sum and substance,  that he would only hire  a "black woman" for her position.  (Pl. Stmnt. Point II-B).

Second, after Ms. Woodard was hired, she was subjected to discriminatory comments, by a male co-worker (Paul Celt).  In August 2004, Ms. Woodard filed a complaint of discrimination with her new supervisor, Mark Gall (head of the New York office).  Rather than cure the discrimination, Gall made numerous discriminatory comments.  (Pl. Stmnt. Point II-B).

Third, in October 2004, Ms. Woodard was assigned what was essentially a "dead account" list to cover, to prevent her from meeting her goals for 2005, which had been substantially increased.  (Pl. Stmnt. Point II-C).  In April 2005, the list was made even worse.

Fourth, in November 2004, Ms. Woodard was assigned a new direct supervisor, Mary Jo Romeo, who reported directly to Mr. Gall.  Romeo told Woodard it was Gall's "sand box" and Romeo herself made numerous discriminatory comments to Ms. Woodard.  (Pl. Stmnt. Point II-B).  In early December 2004, Defendants gave Ms. Woodard a negative performance evaluation raising false criticisms of her job performance.  (Pl. Stmnt. Point I-E).  Defendants then gave Ms. Woodard a compensation package for 2005 that included a substantial decrease in base salary and no raise, while the white male Account Managers all received raises for 2005.  (Pl. Stmnt. Point II-F).   Plaintiffs demanded that Defendants produce all 2004 evaluations for other Account Managers but Defendants failed to do so, alleging that such documents could not be located, even though Defendants admit that evaluations are retained on their computer system and in personnel files.  Defendants' excuse for failing to produce such documents is devoid of merit.  (Id.).

Fifth, in January 2005, Ms. Woodard again complained of discrimination and objected to her evaluation and compensation package.  Within two months, Paul Iaffaldano, Mr. Gall's boss, advised Mr. Gall that he wanted to fire Ms. Woodard    (Pl. Stmnt. Point II-G to II-K).

Sixth, on April 18, 2005, Mr. Gall gave Ms. Woodard a written warning to set her up for discharge. Ms. Woodard filed a rebuttal on April 22 and was fired. Defendants' stated reason for terminating her is a pretext for discrimination/retaliation. (Pl. Stmnt. Point II-L to II-O). There is also contradictory testimony as to who made the decision to fire Ms. Woodard.

Seventh, Plaintiffs Woodard and Lawless filed EEOC Charges and, after an investigation, the EEOC issued Determinations in favor of Plaintiffs. (Pl. Stmnt. Point II-Q).

Eighth, Ms. Woodard was treated differently than her peers of white male Account Managers. Defendants cut Ms. Woodard's base pay and kept her overall compensation (at goal) flat for 2005, while giving raises to the white male Account Managers. Defendants also engaged in such discrimination as against Jen Monson and Elise Lawless, two other female Account Managers (Pl. Stmnt. Point II-F). Defendants failed to produce performance evaluations for male Account Managers even though Defendants retain those on their computer system and in personnel files and even though Defendants allege that evaluations affect compensation. There is also contradictory testimony as to who made the decision to deny Ms. Woodard a raise for 2005 and cut her base salary by more than 20%. (Pl. Stmnt. Point II-F and ¶ 284).

Ninth, Defendants gave superior account lists to white male Account Managers, including Craig Meadow and Peter Wright, who was hired after Ms. Woodard. (Pl. Stmnt. Point II-C). Defendants did not fire Paul Celt for his discriminatory comments in 2004, even though Defendants allege that Mr. Celt's conduct was as serious as Defendants' allegations against Ms. Woodard. (Pl. Stmnt. Point II-B, II-M and ¶ 55, 336).

Tenth, Plaintiffs have evidence of discrimination and retaliation against other females, including among others Elise Lawless, Jen Monson, Catherine Jolly, Courtney Kurland and Meena Bhiro. (Pl. Stmnt. Point II-R; Goldberg Cert, Exhs. U through Z; Lawless Dep. Exh. 4).

Finally, Ms. Woodard maintains she is entitled to an adverse inference against Defendants and denial of Defendants' motion because Defendants failed to produce relevant evidence. Defendants failed to produce 2004 evaluations for Ms. Woodard's peers of Account

19

Managers.  Such evaluations are highly relevant because Defendants gave Ms. Woodard a

negative evaluation for 2004 and denied her a raise for 2005 while giving raises to her peers of

Account Managers (except for Ms. Lawless and Ms. Monson).  Defendants failed to produce the

evaluations for Ms. Woodard's peers, alleging the documents cannot be located, even though

they are retained on Defendants' computer system and in personnel files.  Defendants knew or

should have know that such documents needed to be retained for this litigation, particularly given

Ms. Woodard's internal complaints regarding her evaluation and compensation.  Fed. R. Civ. P.

26; Fed. R. Civ. P. 37; Byrnie v. Town of Cromwell, Bd. Of Educ., 243 F.3d 93, 107 (2d Cir.

2001); Scott v. IBM Corp., 196 F.R.D. 233, 249-252 (D.N.J. 2000).

    **2.**    **The "Same Actor" Defense Is Inapplicable**

    Defendants seek to invoke a "same actor" defense, alleging that Mr. Camp hired Ms.

Woodard and participated in the decision to fire Ms. Woodard.  (Def. Br. 14).  Defendants are

wrong both on the law and the facts.  First, the "same actor" inference is only permissive, not

mandatory.  Memnon v. Clifford Chance US, LLP, 08 Civ. 2874 (HB), 2009 WL 3459188, at

*13 (S.D.N.Y. Oct. 27, 2009) (Baer, J.) ("the same-actor inference is permissive, not mandatory,

and even if the same individuals made both decisions, the Court would not be compelled to give

[defendant] the benefit of the inference at this stage of the litigation, and I don't"); Copeland v.

Rosen, 38 F. Supp.2d 298, 305 (S.D.N.Y. 1999) (Leisure, J.) (same actor inference "is not to

become a substitute for a fact-intensive inquiry into the particular circumstances of the case at

hand [ . . . . ]  There are a variety of plausible explanations of such 'hire-fire' conduct that may

support an inference of discriminatory animus," such as "supervisors who purposefully hire

members of a protected class and then fire them in the hope that the act of hiring will be the

focus of attention and will allay any suspicions about other discriminatory acts of the supervisor"

and a supervisor "seeking to reap the perceived benefit of the hirings while avoiding working for

a sustained period with persons against whom the supervisor is prejudiced"); see also Ramos v.

Marriott Int'l, Inc., 134 F. Supp.2d 328, 345-46 (S.D.N.Y. 2001) (Conner, J.).  Second, the same

actor inference is inapplicable where there is at least an issue of fact as to whether the person that hired Plaintiff is the same person that made the decision to fire the Plaintiff. See, e.g., Memnon, 2009 WL 3459188.   Third, the same actor inference is inapplicable where the Plaintiff alleges discriminatory comments by the alleged decision makers, even if such persons were involved in the initial hiring decision.  Bookman v. Merrill Lynch, No. 02 Civ. 1108 (RJS), 2009 WL 1360673 (S.D.N.Y. May 14, 2009) (Sullivan, J.) (discriminatory comments by alleged decision makers precluded summary judgment).   Here, the "same actor" inference is inapplicable.

First, there is at least a material issue of fact as to identity of the decision makers in the hiring and firing decisions pertaining to Ms. Woodard.  Defendants allege that Meade Camp participated in both decisions.  (Def. Br. 14).  However, Defendants also allege that the termination decision was a "group decision" and, therefore, do not allege that Mr. Camp was the "sole decisionmaker."  (Def. Br. 14).  Mark Gall testified that the decision to fire Ms. Woodard was made by Paul Iaffaldano, which testimony excluded Gall and Camp from the termination decision.   Mr. Gall also testified that he had no involvement in the decision.  Mr. Gall's testimony excluding himself from the decision is contradicted by other evidence in the record. There is at least a material question of fact as to who made the decision to fire Ms. Woodard. (Pl. Stmnt. Point II-F & ¶ 284, II-N & ¶ 339).  Second, Plaintiff has extensive evidence of discriminatory remarks made by Camp, Gall and others  Such evidence precludes summary judgment.  It creates at least a material issue of fact as the motives of Camp and Gall in any termination decision that they were allegedly involved in.  The EEOC's determinations in Plaintiffs' favor outweighs the alleged "same actor" inference.  (Pl. Stmnt. Point II-Q).

## V.   THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING CLAIMS OF DISCRIMINATION IN PAY

Defendants seek summary judgment regarding Ms. Woodard's claims of discrimination in compensation.  (Def. Br. Point II).   The Court should deny Defendants' motion.  Defendants argue that Ms. Woodard was not "similarly situated" to any other Account Manager treated better than her.  (Def. Br. 15). This is baseless.  Ms. Woodard's peer group included various white male

Account Managers and, as noted above, Ms. Woodard was treated differently than her peers.  For 2005, Defendants cut Ms. Woodard's base pay and kept her overall compensation flat, while giving raises to the white male Account Managers.  Defendants engaged in such discrimination as against Elise Lawless and Jen Monson, two other female Account Managers (Pl. Stmnt. Point II-F).  Defendants failed to produce performance evaluations for male Account Managers even though Defendants retain those on their computer system and in personnel files and even though Defendants allege that evaluations affected compensation.  (Pl. Stmnt.  Point II-E and II-F and ¶ 282).  Defendants argue that Ms. Woodard's initial compensation package was larger than that of Craig Meadow.  (Def. Br. 16). Defendants omit that Mr. Meadow received a superior account list than Ms. Woodard and a raise for 2005, while Ms. Woodard was denied a raise, and omit that Defendants failed to produce Mr. Meadow's 2004 evaluation alleging it could not be found. (Id.).  As noted above, Plaintiffs are entitled to an adverse inference against Defendants. The undisputed evidence of disparate treatment in compensation as between Ms. Woodard (as well as Ms. Monson and Ms. Lawless) and her peers of white male Account Managers – when coupled with the discriminatory comments made by members of management – is compelling evidence that mandates denial of Defendants' motion.

## VI.    DEFENDANTS' MOTION AS TO  HOSTILE WORK ENVIRONMENT CLAIMS

### A.    Standard For Hostile Work Environment

Defendants seek summary judgment as to Ms. Woodard's claims that she was subjected to a hostile work environment arguing that the incidents are insufficient to establish a hostile work environment claim.  (Def. Br. Point III).  Defendants' argument is baseless and ignores the extensive record in this case.  Ms. Woodard has claims of discrimination, harassment and hostile work environment based upon her gender, race and national origin, and has more than sufficient evidence of repeated incidents of harassment to defeat Defendants' motion.  (Pl. Stmnt. Point II).

A hostile work environment can be established by "a single incident [that] was extraordinarily severe, or that a series of incidents [was] 'sufficiently continuous and concerted'

22

to have altered the conditions of her working environment.'" <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002) (<u>quoting</u> <u>Cruz v. Coach Stores</u>, 202 F.3d 560, 570 (2d Cir. 2000)); <u>accord</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-23 (1993); <u>see also</u> <u>Aulicino v. New York City Dept.</u> <u>of Homeless Services</u>, 580 F.3d 73 (2d Cir. 2009) (remand for consideration of <u>Harris</u> factors most important to Second Circuit (severity and frequency) in light most favorable to plaintiff for purposes of summary judgment). "'[A]ppalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable.'" <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 70 (2d Cir. 2000) (<u>quoting</u> <u>Richardson v. N.Y.S. Dept. of Corr.</u>, 180 F.3d 426, 439 (2d Cir. 1999)); <u>Sowemimo v. D.A.O.R. Security, Inc.</u>, 43 F. Supp.2d 477 (S.D.N.Y. 1999) (Carter, J.) (denying defendant's motion for summary judgment); <u>Luongo v. Nationwide Mutual</u> <u>Ins. Co.</u>, No. 95 Civ. 3190 (MBM), 1996 WL 445365 (S.D.N.Y. Aug. 7, 1996) (Mukasey, J.) (plaintiff stated claims of harassment).

**B.    <u>Plaintiff Established A Hostile Work Environment</u>**

Here, Ms. Woodard clearly established a hostile work environment.  Plaintiff's hostile work environment claim is based on numerous incidents, supported by admissible evidence.

First, Ms. Woodard has established numerous incidents of discriminatory comments by Mead Camp, Paul Celt, Mark Gall and Mary Jo Romeo.  (Pl. Stmnt.  Point II-B, II-D, II-I).

Second, in October 2004, Ms. Woodard was assigned what was essentially a "dead account" list to cover, to prevent her from meeting her goals.  Defendants gave superior account lists to Ms. Woodard's peers of white male Account Managers. (Pl. Stmnt.  Point II-C).

Third, in early December 2004, Defendants gave Ms. Woodard a negative performance evaluation raising false criticisms of her performance.  Defendants then gave her a compensation package for 2005 that cut her base salary and kept her overall compensation flat, while giving raises to her peers of white male Account Managers. (Pl. Stmnt.  Point II-E to II-G).

Fourth, Ms. Woodard continued to seek support and training from Mr. Camp and Mr. Gall, and was flatly rejected when she made her requests.   (Pl. Stmnt. Point II-D, II-J).

Fifth, Mr. Gall, as well as white male Account Managers, rummaged through Ms. Woodard's desk and removed her belongings. (Pl. Stmnt. Point II-D and ¶ 264).

Sixth, on April 18, 2005, Mr. Gall gave Ms. Woodard a written warning on to set her up for discharge and gave her an account list even worse than her prior list.  The warning was an act of severe harassment. Ms. Woodard filed a rebuttal on April 22 and was then fired.  (Pl. Stmnt. Point II-K to II-O).

Seventh, Mr. Gall's conduct with a baseball bat and exposing his crotch directly support Ms. Woodard's claims (Pl. Stmnt Point II-P) and Ms. Woodard was aware of ongoing workplace harassment against other females and women of color, including without limitation Elise Lawless, Jen Monson, Catherine Jolly, Meena Bhiro and/or others.  (Pl. Stmnt.  Point II-R).

## C.    **Defendants Are Liable For The Conduct**

Defendants argue that they are not liable for the conduct of Paul Celt or Mary Jo Romeo because they took corrective action.  (Def. Br. 21).  This is false.  First, when Ms. Woodard complained to Mr. Gall about Mr. Celt's conduct, Mr. Gall himself responded by making discriminatory comments to Ms. Woodard.  Ms. Woodard made it clear that Mr. Gall's conduct was unwelcome and offensive and, in any event, Mr. Gall knew his conduct was discriminatory and harassing because he engaged in that conduct in response to Ms. Woodard's complaint about Mr. Celt's discriminatory comments.  (Pl. Stmnt. Point II-B).  Second, Mr. Gall was head of the New York office and had authority for hiring and firing (Pl. Stmnt.  Point II-A, II-B, II-N and ¶ 284, 340).  In that capacity, Mr. Gall's unlawful discriminatory and harassing conduct is imputed to Defendants.  See, e.g., Heskin v. Insite Advertising, Inc., 2005 WL 407646, No. 03 Civ. 2598 GBD AJP (S.D.N.Y. February 22, 2005) (Peck, C.M.J.); see generally Mack v. Otis Elevator Company, 326 F.3d 116 (2d Cir. 2003), cert. denied 540 U.S. 1016 (2003).  Third, Defendants allege that Ms. Romeo was terminated because of her conduct towards Ms. Woodard.  (Def. Br. 22).  However, Ms. Romeo testified under oath that she was told her employment was being terminated solely because of complaints by "perspective employees" – i.e., that her discharge had

24

nothing to do with any complaint by Ms. Woodard.  (Pl. Stmnt. Point II-I, II-J and ¶ 95).  The above demonstrates that Defendants are liable for the conduct, belies Defendants' arguments that they took appropriate remedial action, and mandates denial of their motion.

## VII.   THE COURT SHOULD DISREGARD DEFENDANTS'  AFFIDAVITS

This Court should disregard Defendants' affidavits.  One of Defendants' witnesses is a female that alleges she was treated fairly.  (See Affidavit of Janet Poillon).  This is no basis for summary judgment.  See Graham, 230 F.3d 34, 43-44 (denying summary judgment motion notwithstanding favorable treatment by employer of other members of plaintiff's protected class).  Defendants have other witnesses that claim not to observe any wrongdoing. (See, e.g., Affidavits of Meade Camp, Matt Derella, Craig Meadow).  This is no basis for summary judgment.  Mr. Camp engaged in discriminatory conduct (Pl. Stmnt. Point II-B, Mr. Meadow engaged in improper conduct (Pl. Stmnt. Point II-D), and their failure to perceive wrongdoing adds nothing.  Graham, 230 F.3d 34, 38; Chambers, 43 F.3d 29, 37; Rosen, 928 F.2d 528, 533.  Defendants' witnesses Camp and Iaffaldano allege inadmissible hearsay statements.  (Camp Aff. Par. 19-20; Iaffaldano Aff. ¶ 4).  The Court should disregard Defendants' affidavits.  (Pl. Stmnt.; Woodard Aff.; Goldberg Cert, Exhs. U-Z).  Mack v. U.S., 814 F.2d 120, 124 (2d Cir. 1987); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999), cert. denied 530 U.S. 1242 (2000), reh'g denied 530 U.S. 1289 (2000).

## CONCLUSION

The Court should deny Defendants' motion for summary judgment in its entirety.

Plaintiff requests an award of attorneys' fees and costs incurred in responding to the motion.

Dated: New York, New York
       December 1, 2009

                                        KENNETH A. GOLDBERG
                          By:   /s/ Kenneth A. Goldberg
                                        Kenneth A. Goldberg (KG 0295)
                                        Attorney for Plaintiffs
                                        60 East 42nd Street
                                        New York, New York 10165
                                        (212) 983-1077

25